**In re John C. GRAVES, II, Debtor.**

**John C. GRAVES, II, Plaintiff,**

v.

**Jan HART, Defendant.**

**Bankruptcy No. 86–03722–BKC–SMW. Adv. No. 86–0734–BKC–SMW–A.**

United States Bankruptcy Court, S.D. Florida.

Jan. 30, 1987.

Patricia A. Redmond, Miami, Fla., for debtor.

Sandy Karlan, Miami, Fla., for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE came on before the Court on January 13, 1987 on JOHN C. GRAVES, II, Complaint to Determine Dischargeability of Debt and the Court having heard the testimony and examined the evidence presented, observed the candor and demeanor of the witnesses, considered the arguments of counsel, and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

The Plaintiff's Complaint requests the dischargeability of his debt in the instant bankruptcy pursuant to 11 U.S.C. § 523(a)(5).

The facts are not in dispute. The Debtor, JOHN C. GRAVES, II, was married to the Defendant, JAN HART, in Miami, Florida on December 22, 1984. On June 3, 1986, the parties executed a Marital Settlement Agreement. A Final Judgment of Dissolution was entered by the Judge of the Circuit Court for the Eleventh Judicial Circuit in and for Dade County, Florida on June 9, 1986 incorporating by reference the

Marital Settlement Agreement. The Plaintiff made several payments to the Defendant pursuant to the obligations set forth under the Marital Settlement Agreement prior to filing for relief under Chapter 11 of the Bankruptcy Code on November 25, 1986. In December of 1986 the Plaintiff ceased paying all obligations as set forth under the Marital Settlement Agreement. The relevant provisions of the Marital Settlement Agreement relate specifically to the Wife's successful attendance at and completion of law school at the University of Miami. Specifically the following provisions were before this Court.

*IN THE EVENT WIFE COMMENCES LAW SCHOOL SEPTEMBER 12, 1986.*

(c)(i) The Husband shall pay directly to the said law school the semester tuition (presently $4800) for five and one-half (5½) continuous semesters of academic credit load.

(ii) For the academic year 1986/1987, the Husband shall pay the tuition ($4800, plus any increases) directly to the University of Miami Law School; the same provisions shall apply to the academic year 1987/1988.

(iii) Upon being presented with invoice(s) for the purchase of required law books for each semester, the Husband shall pay the total needed sum; however, the Husband's liability for books shall not exceed $500 per semester.

(iv) For the Wife's living expenses during the Wife's completion of the remaining two and one-half (2½) academic years, consisting of five and one-half (5½) semesters, the Husband shall pay to the Wife the sum of $1500 per month, commencing upon September 12, 1986, and each month for the two and one-half (2½) academic years.

\* \* \* \* \* \*

*PAST LAW SCHOOL GRADUATION*

(e) For six months from date of the award to the Wife of the Juris Doctor Degree from the University of Miami Law School, the Husband shall pay her $750 per month. The Wife's gainful employment shall not affect this provision unless the Wife's income exceeds $200 per week, in which event, the Husband shall be credited with the excess.

*PREMATURE TERMINATION OF LAW SCHOOL*

(f) In the event the Wife shall not finish law school once she has commenced, for whatever reason, the Husband shall pay her the sum of $1500 per month for six (6) months from date of such premature termination. Upon Husband's making last payment for the sixth (6th) month, all his financial obligations to the Wife shall be satisfied, and he shall be discharged of all further liability whatsoever.

\* \* \* \* \* \*

*BMW AUTOMOBILE*

6. (a) The Husband shall be liable for payment of the remaining price for the Wife's BMW automobile, for which he waives all claim.

(b) The Wife shall be liable for all expenses incurred in behalf of her ownership of the BMW, except that the Husband shall be liable for car insurance during such time she is a law student during the designated time set out above.

*J24 SAILBOAT*

7. (a) The Wife shall have use of the parties' jointly owned J24 sailboat from execution hereof until June 1, 1987. Upon June 1, 1987, the Wife shall convey all her right, title and interest in said sailboat to the Husband, along with delivery of possession, concurrently therewith.

The Agreement further had sections that concerned the division of personal property, existing joint debts and tax liability. All payments by the Husband were to be tax deductible to him and taxable to the Wife as alimony, and further all payments to be made by the Husband were to cease upon the death or remarriage of the Wife.

The Plaintiff asserted the position that the evidence and testimony presented at trial established that the former Wife was capable of supporting herself prior to the marriage and that the marriage was of a

short duration and further that the Wife no longer had the need for the rehabilitative alimony provided for in the Marital Settlement Agreement nor does the Plaintiff Husband have the ability to further assist her financially. The Plaintiff urged that this Court revisit the Marital Settlement Agreement and consider it in light of the current needs and abilities of the parties.

However, the Eleventh Circuit has specifically ruled on this particular issue. *In re Harrell*, 754 F.2d 902 (11th Cir.1985), the Court held that the bankruptcy court's obligation is to determine whether "the support label accurately reflects that the obligation at issue is 'actually in the nature of alimony, maintenance or support' ".

"The statutory language suggests a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support. The language does not suggest a precise inquiry into financial circumstances to determine precise levels of need or support; nor does the statutory language contemplate an ongoing assessment of need as circumstances change."

\* \* \* \* \* \*

"We conclude that Congress intended that bankruptcy courts make only a simple inquiry into whether or not the obligation at issue is in the nature of support. This inquiry will usually take the form of deciding whether the obligation was in the nature of support as opposed to being in the nature of a property settlement."

Further, the court specifically rejected the "needs" test set forth in *In re Calhoun*, 715 F.2d 1103 (6th Cir.1983) and limited the bankruptcy court's inquiry to the nature of the award and the intent of the parties. See also *Draper v. Draper*, 790 F.2d 52 (8th Cir.1986) and *In re Schack*, 46 B.R. 520 (Bktcy S.D. Fla.1985).

■ The Marital Settlement Agreement in this case refers specifically to alimony. This section provides alternative payment plans related to the Wife's attendance at and completion of graduate or law school.

The relevant provisions relate to law school because she began attending prior to September 12, 1986. The support payments required to be made by the Husband to the Wife under the Marital Settlement Agreement are in the nature of rehabilitative alimony as described under Florida law. Additionally, the Marital Settlement Agreement specifically states "whereas, despite the short term of the marriage, the Husband desires to assist the Wife in completing her education, ...".

In the *Matter of MacKenzie*, 57 B.R. 107 (Bktcy. M.D.Fla.1985), the court held certain obligations of the debtor to be within the "nature of support" pursuant to 11 U.S.C. § 523(a)(5), based upon six factors:

"(1) Whether the obligation under consideration is subject to contingencies such as death or remarriage;

(2) Whether the payment was fashioned in order to balance disparate incomes of the parties;

(3) Whether the obligation is payable in installments or in a lump sum;

(4) Whether there are minor children involved in the marriage requiring support;

(5) The respective physical health of the spouse, and the level of education and, last

(6) Whether, in fact, there was need for support at the time of the circumstances of the particular case."

In this case the court finds the payments to be made by the Husband fall into several categories, and include:

1. Payments to the University of Miami Law School for tuition;

2. Payments for premiums on Wife's health insurance;

3. Payments directly to Wife for living expenses;

4. Payments to Wife to reimburse her for school books;

5. Payments to secured creditor on Wife's automobile and payment of Wife's automobile insurance.

■ The court rejects the Plaintiff's argument that the determination under the

bankruptcy law mandates that this court consider the Plaintiff/Debtor's present income to determine whether or not his obligation is dischargeable under the Bankruptcy Code. This Court is convinced that the *Harrell* case is controlling and that it has met its obligations by reviewing the Marital Settlement Agreement and acknowledging the intent of the parties at the time of entering into the Agreement as fully stated in the Marital Settlement Agreement.

In conclusion, this Court holds as a matter of law that the Husband's obligations under the above-referenced Marital Settlement Agreement are non-dischargeable because the obligations are "actually in the nature of alimony" pursuant to 11 U.S.C. § 523(a)(5). In accordance with the above findings of fact and conclusions of law, a separate Final Judgment shall be entered on even date herewith.