**In re Michael N. NORTHCUTT, Debtor.**

**Leslie Jean NORTHCUTT, Plaintiff,**

**v.**

**Michael N. NORTHCUTT, Defendant.**

**Bankruptcy No. 92–3242.
Related Case: 92–31419.**

United States Bankruptcy Court,
N.D. Ohio, W.D.

July 22, 1993.

Martha L. Riewaldt, Toledo, OH, for plaintiff.

Mary L. Bendycki, Toledo, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This case comes on for Trial before the Court on Plaintiff's Complaint to Determine the Dischargeability of Defendant/Debtor's (hereafter "Debtor's") Lump Sum Judgment in favor of the Plaintiff. The Lump Sum Judgment reflects sums due and owing for house payments and health insurance premiums pursuant to the Decree of Dissolution of the marriage and Separation Agreement. The Court has reviewed the submitted materials of the parties, exhibits, relevant statutory and case law, as well the entire record. Based on that review, and for the following reasons,

Debtors' Lump Sum Judgment, representing the underlying obligation, is held Non-dischargeable.

### FACTS

The Debtor and Plaintiff were married on or about the 5th day of January 1968, in Louisville, Kentucky. Four (4) Children were as born issue of the marriage. On April 22 1988, the parties entered into a voluntary Separation Agreement (hereafter "Agreement"). The Agreement stipulated, among other things, that the Defendant was to continue to make mortgage payments on the marital residence, and to continue to pay for the health insurance premiums of the children and former spouse. The obligations of the Defendant were to continue until the former wife died, or remarried but for a period of time not to exceed five (5) years. The parties were divorced on May 31, 1988, with Plaintiff obtaining custody of the parties four (4) minor children. The Final Decree and Judgment Entry of the Dissolution of the Marriage (hereafter "Decree"), provided inter alia, that "both petitioners each voluntarily entered into a Separation Agreement and are completely and absolutely satisfied with said Agreement ... and agree to its terms and conditions." (paragraph 7 of the Decree). The Decree also provided that "the Petitioners are ordered to fulfill each and every obligation imposed by the Separation Agreement which is attached hereto and made a part hereof ..." (Paragraph 2 of the Decree "Order"). Debtor stopped making mortgage payments, and in February 1990, the marital residence was sold. After the sale of the property, Plaintiff and minor children were forced to move. Additionally, at the time of the sale, three (3) months of mortgage arrearages existed, totalling Three Thousand Twelve and 81/100 Dollars ($3,012.81). Shortly thereafter, Debtor stopped making payments on Plaintiff's health insurance premiums, from 1990 to 1992, totalling Nine Hundred Eighty–Five and 26/100 Dollars ($985.26).

On April 10, 1992, Defendant filed a voluntary petition for Chapter 7 and sought to discharge the obligations arising out of the

Lump Sum Judgment. The Plaintiff initiated this adversary proceeding to determine whether the Debtor's obligations under the separation agreement are in the nature of alimony, support or maintenance and whether such obligations are dischargeable.

On April 14, 1992, the Plaintiff obtained a Lump Sum Judgment against the Debtor in the Court of Common Pleas of Wood County in the amount of Nine Thousand Nine Hundred Thirty–One and 81/100 Dollars ($9,931.87) (representing Three Thousand Twelve and 81/100 Dollars ($3,012.81) in mortgage arrears; Five Thousand Two hundred Thirty and 00/100 ($5,230.00) in rent; and One Thousand Six Hundred Eighty Nine and 06/100 Dollars ($1,689.06) for insurance premiums as of February 4, 1992 at 5% interest).

## LAW

The Bankruptcy Code § 523(a)(5) provides in relevant part:

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record....

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. 11 U.S.C. § 523(a)(5)(B).

## DISCUSSION

This is a core proceeding under 28 U.S.C. § 157(I)—determinations as to the dischargeability of particular debts. The sole issue before the Court is whether the obligations of the Debtor to make mortgage and health insurance payments pursuant to a Separation Agreement were intended to constitute support and maintenance for the former spouse, therefore making the debts nondischargeable Pursuant to 11 U.S.C. § 523. The relevant provisions of the Agreement entered into by the parties are as follows:

## II. DIVISION OF REAL PROPERTY.

... parties mutually agree that husband will continue to make payments on said marital residence for a period of time until wife dies or remarries, but in no event for a period of time longer than five (5) years from January 1 1988 ... At the termination of the payment of house payments, which parties both agree *will not be deemed alimony, but will in fact be property division,* husband will execute to wife a Quit–Claim Deed giving her all right, title and interest in and to said real estate.... (emphasis added)

## IV. SUPPORT—ALIMONY.

... Wife is not now gainfully employed outside the home. Pursuant to that end, based upon the length of the marriage, the relative earning powers of the parties, children born issue of the marriage, and the present expenses of wife and minor children at the marital residence, husband agrees to pay wife as and for alimony the amount of five hundred Dollars ($550.00) per month until such time as she dies or remarries, however, in no event for a period of time longer than Five (5) years from January, 1988.

## VI. CHILD SUPPORT PAYMENTS.

... Husband agrees to pay health insurance deductible for wife and children with wife having no responsibility thereon....

## VII. MISCELLANEOUS PROVISIONS.

### (e) Entire Agreement.

This Separation Agreement constitutes the entire agreement between husband and wife, the parties herein, and shall not be modified or changed in any respect whatsoever, except as provided herein.... Parties to this Separation Agreement also agree that there are no other representations, warranties, promises, covenants or understanding between each other, other than those expressly set forth in the Separation Agreement....

**(h) Voluntary Execution.**

The provisions of this Separation Agreement and their legal effect have been fully explained to Husband and Wife, and each party acknowledges that the Separation Agreement is fair and equitable, and that it is being entered into by both Husband and Wife voluntarily, and that it is not the result of any fraud, duress, or undue influence....

The Separation Agreement signed by the parties provided among other things that the Debtor would assume responsibility for the mortgage payment on the marital property, and maintain health insurance for the wife for a period of time not to exceed five (5) years. Debtor now seeks to have these obligations discharged stating that the obligations were not in the nature of alimony, support or maintenance, but were part of the property division. To determine the dischargeability of the agreement, the Court must look to the individual circumstances of the case. *In re Hoover*, 38 B.R. 325 (D.C.Ohio 1983), and upon the intention of the parties that the payments be in the form of support or maintenance (notwithstanding the classification of the payments). *In re Stone*, 79 B.R. 633, 637 (Bankr.D.Md.1987).

The Sixth Circuit has considered a similar issue in *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103 (6th Cir.1983). In *Calhoun*, a Chapter 7 debtor sought to have discharged certain joint debts incurred during the marriage and assumed by the debtor under the separation agreement. The obligations were in the form of debts arising from charge cards, (Visa, Mastercard), two car loans, and a consolidation loan. The debtor, unrepresented by counsel, agreed to assume the debts jointly incurred during the marriage and to hold the former spouse harmless for their payment. *Id.* at 1105. The Court interpreted Section 523(a)(5) as making nondischargeable only those debts "actually in the nature of" alimony or support. *Id.* at 1107. The obligation to provide support is determined by state law, but the determination of when an assumption of debts is "in the nature of" alimony, or support is deter-

mined by federal law. *Id.* The *Calhoun* Court devised a "test" to determine whether the assumption of joint debts was intended to create an obligation to provide maintenance or support. *Id.* at 1109.

Under the *Calhoun* test the first inquiry that the court must make is whether the parties intended to create an obligation to provide support by the assumption of joint marital loans. *Id.* In making that determination, the Sixth Circuit has suggested that the bankruptcy Court consider any relevant evidence necessary to make a factual determination of intent to create support. *Id.* If the intent of the parties is found not to create such an obligation, the inquiry ends there and the debt may be held dischargeable.

In the instant case the Plaintiff testified that the Debtor approached her with a typed statement of terms and stipulations agreeable to the defendant regarding a settlement and separation from the Plaintiff. After a few minor modifications the "statement of terms" became the voluntary "Separation Agreement". The agreement stated that the Debtor would continue to make mortgage payments on the marital residence until the wife died, remarried or for a period not to exceed five (5) years. (Agreement Section II. Paragraph 2). Paragraph 3 of the same section expressly stated that; "it is the wish of the parties that the wife and minor children continue to reside in Perrysburg Ohio, and that the children continue to attend the Perrysburg public schools, and as such, this provision in reference to the real estate is an attempt to facilitate wife and minor children residing in said marital residence...." Plaintiff also testified that the Debtor requested that reference to the house payment obligation fall under Section II, "Division of Real Property", so that the Plaintiff would not have to pay additional alimony taxes.

Debtor argues that it was the intent of the parties that the proviso on mortgage payments fall within the division of real property; therefore, the payments are not in the nature of alimony or support. Although the classification of an agreement is an important factor in determining the

intent of the parties to provide for the payment of alimony, the possibility exists that the agreement may be a hybrid of two means of paying alimony. *Stone v. Stone (In re Stone),* 79 B.R. 633, 637 (Bankr. D.Md.1987) (citing *Melichar v. Ost,* 661 F.2d 300 (4th Cir.1981), cert. denied, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982)). The fact that the provision regarding mortgage payments falls under the heading of "division of real property" is not dispositive that the parties did not intend these payments as a form a support. In the instant case the residential property was left in both names after the divorce has been granted. In addition, the Debtor received the benefit of the mortgage interest on his income tax. If the mortgage payments were to become part of the division of property the party receiving the marital property as part of the settlement should have received with it the benefit of the tax deduction.

It is important to view the facts of this case in the proper context. Throughout the major part of the marriage the Plaintiff was unemployed. The only work undertaken outside of the home were two minimum wage jobs between 1968 and 1976 which lasted approximately three (3) years. The Plaintiff has no specific job training or skills. At the time of the divorce the Plaintiff received custody of the parties' four (4) minor children. Shortly thereafter the Plaintiff worked for a temporary placement agency making an hourly wage of Five Dollars ($5.00). At the time of the trial Plaintiff was unemployed. Based on these facts, it is the view of this court that the agreement provision regarding the Debtor's obligation to continue to make mortgage payments was intended by the parties to be an extension of support by providing housing for the former wife and minor children.

The second inquiry in the *Calhoun* "test" is whether the assumption of debts had the effect of providing the support necessary to meet the daily needs of the former spouse and any children of the marriage. *Calhoun, supra,* at 1109. In determining this factor the Bankruptcy Court should look to the practical effect of the discharge upon each loan and the ability of the spouse to sustain daily needs, for example; housing, transportation, food et cetera. *Id.* If without the loan assumption the spouse could not maintain the daily necessities, the loan assumption may be found to be in the nature of support. *Id.*

■ The Court has determined that the provision regarding the assumption of the mortgage payments was an extension of support by providing housing for the Plaintiff and minor children. In November 1989 the Debtor stopped making the mortgage payments and shortly thereafter the Plaintiff was forced to sell the marital residence. At the time of the sale the mortgage was three (3) months in arrears. After the sale of the residence the Plaintiff and minor children moved into a townhouse and used the proceeds of the sale to pay the rent. When the funds were depleted the Plaintiff and remaining children were forced to move again. Plaintiff argues that she relied upon the Debtor's obligation to continue making the mortgage payments for five (5) years because it provided her and the children a place to live while she got her life together after the divorce. The *Calhoun* Court suggested that the Bankruptcy Courts look at the financial status, prior work experience or other means of support to determine whether loan assumption is in the nature of support. *Id.* at 1110. In the instant case, as part of the Decree the Plaintiff received a monthly income of One Thousand Seven Hundred Dollars ($1,700.00); (Five Hundred Dollars ($500.00) in alimony; and One Thousand Two Hundred Dollars ($1,200.00) in child support). This income did not include money received for the mortgage payments. Plaintiff's monthly expenses were calculated at One Thousand Three Hundred Sixty Nine and 10/100 Dollars ($1,369.10). An excess of Three Hundred Dollars ($300.00) remained. Debtor argues that Plaintiff could have used the extra $300.00 to pay part of the mortgage, or in any event pay for apartment or housing rental. The Court disagrees with the Debtor's argument. Three hundred dollars does not go very far in today's economy. Incidental

expenses are a frequent occurrence in raising children, particularly teenagers. Therefore, assuming that the Plaintiff had three hundred dollars a month free and clear of all bills, finding decent housing for five (5) people on that amount of money is not very likely, especially in light of the fact that the Plaintiff has no marketable skills or specific job training with which to supplement her income.

These facts demonstrate a great disparity in the earning potential of the parties, and warrants the Court's decision that the assumption of the mortgage payments pursuant to the Agreement were necessary for the daily needs of the Plaintiff and minor children. Therefore, the second inquiry of the *Calhoun* test has been satisfied.

Regarding the Debtor's assumption of Plaintiff's health insurance premiums, the Court in *In re Stone* held that health insurance was clearly related to the support and well being of the former spouse is an area of one's daily life that is more susceptible to unanticipated financial burdens brought on by illness. *Stone v. Stone (In re Stone)*, 79 B.R. 633, 640 (Bkrtcy.D.Md. 1987). This Court agrees with the *Stone* Court and as such holds that these payments are within the nature of support.

The third and most complex inquiry for this Court to make under the *Calhoun* test is whether the amount of support represented by the assumption of the loans is so excessive as to be unreasonable under the traditional concepts of support. *Calhoun, supra,* at 1110. The *Calhoun* Court reasoned that because excessive loan assumption is at odds with the "fresh start" objective of the bankruptcy code, loan assumption should be treated the same as ordinary direct child support or alimony payments. *Id.* However, there is a split of authority as to whether a Bankruptcy Court may consider the changed financial circumstances of a debtor or the debtor's former spouse or the former spouses' need for support at the time the bankruptcy petition is filed. Bkr.L.Ed. 22:75 at 260. Generally the question of alimony, support or maintenance payments arises after a Court-ordered decree of di-

vorce. If subsequent to the divorce decree, the individual suffers a financial setback and files bankruptcy, the question arises as to whether the current financial position or the position that existed at the time of the divorce should be considered in determining the dischargeability of assumed loans under section 523(a)(5). The majority of courts have held that changes in the Debtor's or Debtor's spouse's financial position, or the support needs of the former spouse or child, at the time of the debtor's filing for bankruptcy are irrelevant to a determination of dischargeability under § 523(a)(5). *See, In re Gibson,* 61 B.R. 997 (Bankr. D.N.H.1986); *Forsdick v. Turgeon,* 812 F.2d 801 (2nd Cir.1987); *In re Stone,* 79 B.R. 633 (Bkrtcy.D.Md.1987); *In re Bell,* 61 B.R. 171 (Bankr.S.D.Tex.1986); *In re Nelson,* 20 B.R. 1008 (D.C.Tenn.1982); *In re Fryman,* 67 B.R. 112 (Bankr.E.D.Wis. 1986); *Draper v. Draper,* 790 F.2d 52 (8th Cir.1986); *In re Jensen,* 17 B.R. 537 (Bankr.W.D.Mo.1982); *In re Smith,* 114 B.R. 457 (Bankr.S.D.Miss.1990); *In re Graves,* 69 B.R. 626 (Bankr.S.D.Fla.1987); *In re Davidson,* 104 B.R. 788 (Bankr. N.D.Tex.1989).

The Sixth Circuit, however, has taken an opposing view and has held that the Bankruptcy Court may consider a Debtor's and his/her former spouse's relative financial positions at the time of the filing of the bankruptcy to determine the dischargeability of the debts under § 523(a)(5). *See In re Calhoun, supra; In re Plaugher,* 37 B.R. 760 (Bankr.N.D.Ohio 1984); *In re Miller,* 17 B.R. 773 (Bankr.N.D.Ohio 1982); *In re Brace,* 13 B.R. 551 (Bankr.N.D.Ohio 1981).

In this case the Debtor had an annual income of approximately Sixty Six Thousand Seven Hundred Seventy Five Dollars ($66,775.00) during 1987, the time into which the Separation Agreement was entered. Debtor testified that he lost his job as a car sales manager in or about December 1988 and subsequently held various sales positions with other car dealerships. In April 1992, Debtor filed the instant voluntary petition. Debtor's petition listed an annual income of Twenty Four Thousand

Five Hundred Forty Dollars ($24,540.00) (minus alimony and child support deductions). Debtor seeks to have the Lump Sum Judgment discharged under section 523(a)(5) claiming that his changed financial situation prevents his ability to pay the assumed obligations. The *Calhoun* Court held that; "if the loan assumption is too excessive to be fairly considered in the nature of support, the bankruptcy court must set a reasonable limit on the nondischargeability of the obligation for purposes of the bankruptcy." *Calhoun, supra,* at 1110. In addition, "the Court may consider the debtor's current ability to pay insofar as it relates to the *continuing* obligation to assume the joint debts." (emphasis added). *Id.,* n. 12.

This Court interprets the *Calhoun* court as meaning that only those assumed loans that are "continuing or ongoing", may be considered when determining a debtor's general ability to pay. In this case the Plaintiff seeks to recover money from a Lump Sum Judgment that reflects *past* obligations of the Debtor pursuant to the parties Separation Agreement and Divorce Decree. There are no future, current, or continuing obligations with regard to the mortgage payments or the health insurance premiums. The Agreement states that the Debtor's assumption of payments would continue for a period of time not to exceed five (5) years from January 1, 1988. Under the terms of the Agreement, Debtor's obligations for the mortgage payments and health insurance premiums would have effectively terminated on January 1, 1993. Debtor, however, stopped making payments on these obligations prior to the legal termination of said obligations, (before Plaintiff died, remarried, or before five years from the date established by the Court). The only "continuing" obligations for the Debtor are in the form of child support for the youngest child, approximately age 8. Therefore, the Debtor's financial situation is irrelevant as far as past obligations to the Plaintiff are concerned.

The Court believes that a review of the facts and circumstances of this case, in light of the "Calhoun test", strongly com-

pels the finding that the assumed obligations of the Debtor were in the nature of support and maintenance and are nondischargeable under 11 U.S.C. § 523(a)(5). Inherent in this decision is the disparity of earning potential between the parties, the fact that the Plaintiff had custody of the parties' four minor children, and the fact that the obligations of the Debtor pursuant to the Separation Agreement are "past" obligations. In addition, the Court believes that the Debtor fully understood the consequences of the Agreement that he and Plaintiff entered into based upon his prior experience in the commercial activity of automobile sales.

In reaching its decision, the Court has considered all of the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

Accordingly, and for the foregoing reasons it is

ORDERED that the Debtor's assumed obligations under the parties separation agreement be, and is hereby **NONDISCHARGEABLE** under 11 U.S.C. 523(a)(5).