IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON

_____

ELENIA GRAY,

     Claimant-Appellant,

Vs.

**THE ESTATE OF CHARLES HENRY
GRAY, III,**

     Defendant-Appellee.

Shelby Law No. B-27870
C.A. No. 02A01-9803-PB-00061

**FILED**

**December 16, 1998**

**Cecil Crowson, Jr.**

**Appellate Court Clerk**

_____

FROM THE PROBATE COURT OF SHELBY COUNTY
THE HONORABLE DONN SOUTHERN

Blanchard E. Tual of Memphis
For Appellant

R. Alan Pritchard; Baker, Donelson, Bearman & Caldwell of Memphis
For Appellee

*REVERSED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This case involves a dispute over the proceeds of a life insurance policy. Appellant,

Elenia Gray (Ms. Gray), appeals from the probate court's order in favor of Appellee, the Estate

of Charles Henry Gray, III (Estate).

Ms. Gray and Mr. Gray married on June 2, 1990. No children were born of the marriage. In 1996, Ms. Gray filed a complaint for divorce on the grounds of irreconcilable differences, and the parties entered into a Marital Dissolution Agreement (MDA) on April 29, 1996. Subsequently, a final decree of divorce was entered in May 1996 which approved and incorporated the MDA.

Under the MDA, Ms. Gray was awarded periodic alimony, certain amounts from the division of personal property, health insurance, and automobile insurance. The MDA provided in pertinent part:

> 8. LIFE INSURANCE. Husband agrees to maintain Wife as the beneficiary of Group Policy No. GO-14273 with the Prudential Insurance Company of America or any other life insurance coverage on Husband to the extent of the amount of his outstanding total alimony obligation to Wife.

In accordance with the MDA, Mr. Gray maintained a life insurance policy with $250,000.00 in coverage with Wife as beneficiary. The policy contains a double indemnity provision which is triggered in the event of accidental death.

On July 17, 1996, Mr. Gray died in the crash of TWA Flight No. 800 in New York City. As a result, on September 12, 1996, Ms. Gray received $500,000.00 in proceeds as the beneficiary of the life insurance policy maintained by Mr. Gray in accordance with the MDA.

Subsequently, Mr. Gray's two sons were appointed co-administrators of the Estate. After the co-administrators published their notice to creditors, four claims were filed against the Estate which included a claim by Ms. Gray. She seeks amounts due her under the MDA as follows:

> (1) Division of personal property claim of $375,000.00 plus eight percent (8%) interest from May 1, 1996 until paid in full;
>
> (2) Alimony of $2,000.00 per month until such time as the home located at 4903 East Crestwood, Little Rock, Arkansas is sold, and $4,500.00 per month beginning on the first day of the month following the sale of the Little Rock home through January, 2001;
>
> (3) Health insurance premium in the amount of $1,690.82; and
>
> (4) Automobile insurance premium for five years in the amount of $5,000.00.[1]

---

[1] Ms. Gray also included in her claim the following: an antique headboard and nightstand and a contingent claim for any income tax liability that may arise from any joint tax returns filed by her and Mr. Gray.

The co-administrators paid all claims except the claim filed by Ms. Gray. The Estate did not file an exception to Ms. Gray's claim because it did not dispute the fact that the funds were owed to Ms. Gray under the terms of the MDA. However, the Estate contends that the amount of Ms. Gray's claim should be reduced by the $500,000.00 she received as proceeds under the life insurance policy.

On July 21, 1997, Ms. Gray filed a Petition for Order of Judgment and Order Directing Co-Administrators to Pay Judgment. On October 28, 1997, the probate court filed a memorandum opinion finding that although Ms. Gray's claim should be allowed because no timely exception was filed, the amount of the claim should be reduced by the $500,000.00 proceeds of the life insurance policy. The court said:

> The language of [the MDA] clearly indicates that the purpose of the life insurance policy was to satisfy any of Mr. Gray's obligations to Ms. Gray under the MDA in the event of his death. Principles of equity demand that Ms. Gray should not receive the amount of the insurance proceeds and also recover on the entire amount of her claim against the estate. Thus, the $500,000 that Ms. Gray received as a result of the Decedent's death should serve as a setoff against the amount of her claim against the Decedent's estate.

> \*             \*             \*

> . . . Subsequent to the filing of the claim, Ms. Gray received a payment. While the payment was not from the estate, it was from a source provided by the Decedent and, in fact, was provided pursuant to the MDA for that very purpose. The Court believes that it would be unfair and inequitable not to allow the estate credit for the payment so made.

> \*             \*             \*

> For the reasons set forth above, the Court finds that the amount of the judgment on the claim of Elenia Gray against the estate of Charles Henry Gray, III should be reduced by the $500,000 received by Ms. Gray as the beneficiary of a life insurance policy provided by the Decedent to insure the payment of his obligations to Ms. Gray under the parties' marital dissolution agreement.

After filing the memorandum opinion, the probate court heard oral argument concerning calculation of the final amount of Ms. Gray's claim. The trial court subsequently entered its order that the $500,000.00 in life insurance proceeds be credited against Ms. Gray's claim against the Estate, resulting in a final balance of the claim in the amount of $79,208.00.[2]

---

[2] The probate court reached this amount as follows: $375,000.00 as payment due on the sale of the Little Rock property with $10,000.00 for 8% interest from May 1, 1996 to September

3

Ms. Gray has appealed and presents the following issues, as stated in her brief, for our review:

(A) Whether the trial court erred in its determination that the proceeds received by Appellant as the named beneficiary of an insurance policy insuring the life of her deceased ex-husband can properly be considered as a credit towards the Appellant's claim against the estate of her deceased ex-husband (1) pursuant to the terms of the marital dissolution agreement, (2) pursuant to the laws of the state of Tennessee, or (3) pursuant to the court's equitable powers.

(B) Whether the trial court correctly calculated the final amount of the claim filed by Appellant against the estate of her deceased ex-husband for amounts due her under the marital dissolution agreement.

Ms. Gray asserts that the proceeds she received from the life insurance policy cannot be considered as payment of her claim against the Estate except to the extent provided for and specifically stated in the MDA, i.e., to satisfy any alimony obligation remaining at Mr. Gray's death. According to Ms. Gray, the MDA does not contain any terms that require or imply that any of the proceeds received offset Mr. Gray's additional obligations under the MDA. She argues that as the named beneficiary under the life insurance policy she is entitled to the insurance proceeds and that the only offset made should be for the alimony obligation.

Ms. Gray further contends that the probate court's erroneous decision that the life insurance proceeds she received must offset her entire claim rather than offsetting only the alimony obligation resulted in the final judgment to be erroneous for two reasons. First, the MDA requires interest at a rate of 8% to accumulate on the division of property claim of $375,000.00 to begin running on May 1, 1996 and continue until the entire amount is paid. Thus, according to Ms. Gray, the probate court erred when it terminated the accumulation of interest on September 12, 1996, the day Ms. Gray received the insurance proceeds. Second, the amount by which the claim should have been reduced as a result of the insurance proceeds should have been limited to the $188,372.00 alimony portion of Ms. Gray's claim. Ms. Gray also asserts that the probate court erred in failing to award the exact amounts filed in her claim

_____

12, 1996; $24,000.00 for 12 months of alimony at $2,000.00 per month and $164,372.00 for 42 months of alimony at $4,500.00 per month discounted at 8% for payment in advance; $2,183.00 for health insurance; and $3,653.00 for 42 months of automobile insurance at $100.00 per month discounted at 8% for payment in advance. The subtotal on the foregoing equaled $579,208.00. The trial court then subtracted $500,000.00 for the life insurance proceeds for a total of $79,208.00.

for health and automobile insurance since her claim became a judgment against the Estate because no exception to the claim was filed.[3]

The Estate contends that the probate court was correct in ruling that it was entitled to reduce Ms. Gray's claim by the $500,000.00 she received as beneficiary under the life insurance policy. The Estate asserts that any other ruling would result in an unjustifiable windfall to Ms. Gray and an unjustifiable detriment to the Estate. The Estate argues that Ms. Gray's rights under the life insurance policy were expressly limited by the MDA to the alimony obligation owed to her and once that obligation was paid, Ms. Gray's right to the insurance proceeds ceased. The Estate asserts that the probate court correctly calculated the amount of funds due Ms. Gray and the calculation is according to the intention of the parties as expressed in the MDA. The Estate argues that if credit is not given for the excess funds received, Ms. Gray will receive not only a windfall of over $300,000.00 in excess insurance proceeds but also interest in an amount of over $100,000.00 on the $375,000.00 obligation that has accrued during the time the Estate believed it was going to receive the credit and while the issues were litigated.

The Estate does not seriously question the validity of the payment of the insurance proceeds to Ms. Gray, but primarily rests its position on the provision of the MDA. As heretofore noted, the crucial language in the MDA concerning life insurance states:

> 8.    LIFE INSURANCE. Husband agrees to maintain Wife as the beneficiary of Group Policy No. GO-14273 with the Prudential Insurance Company of America or any other life insurance coverage on Husband to the extent of the amount of his outstanding total alimony obligation to Wife.

In construing the MDA as it pertains to the life insurance policy, the probate court stated in the memorandum opinion:

> The language of this provision clearly indicates that the purpose of the life insurance policy was to satisfy any of Mr. Gray's obligations to Ms. Gray under the MDA in the event of his death.

---

[3]    According to Ms. Gray's calculations, she is to receive $495,859.67, an antique headboard and nightstand, and a contingent amount for any income tax liability that may arise from any joint income tax returns filed by her and Mr. Gray from the Estate to satisfy her claim. She reaches this final monetary sum by reducing her claim of $684,231.67, by $188,372.00 off the insurance proceeds received as alimony.

Specifically, Ms. Gray requests this Court to enter a judgment against the Estate as follows: $375,000.00 due on the sale of Little Rock property with $114,168.85 in interest at 8% if paid by September 1, 1998; $1,690.82 for health insurance; $5,000.00 for automobile insurance less $188,372.00 paid from the insurance proceeds as alimony.

To resolve the first issue, we must determine if the trial court's interpretation of the MDA is correct.

The interpretation of a written agreement is a matter of law and not of fact, therefore, our review is *de novo* on the record with no presumption of correctness of the trial court's conclusions of law. *Union Planters Nat'l Bank v. American Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. App. 1993).

A marital dissolution agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. *See Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993). "A property settlement agreement between a husband and wife is 'within the category of contracts and is to be looked upon and enforced as an agreement, and is to be construed as other contracts as respects its interpretation, its meaning and effect.'" *Bruce v. Bruce*, 801 S.W.2d 102, 105 (Tenn. App. 1990) (quoting *Mathews v. Mathews*, 24 Tenn. App. 580, 593, 148 S.W.2d 3, 11-12 (1940)). Although a copy of the divorce decree is not in the record, the MDA provides for its incorporation into the decree, so we can assume this was done. An alimony agreement incorporated into a divorce decree loses its contractual nature and is a judgment of the court. *See Hays v. Hays*, 709 S.W.2d 625 (Tenn. App. 1986). Court judgments are to be construed like other written instruments. *Livingston v. Livingston*, 58 Tenn. App. 271, 429 S.W.2d 452, 456 (1967). The same is true for insurance policies. "Insurance contracts are subject to much the same rules of enforcement and construction which apply to contracts generally." *Draper v. Great Am. Ins. Co.*, 224 Tenn. 552, 560, 458 S.W.2d 428, 432 (1970).

The cardinal rule for interpretation of contracts is to ascertain the intention of the parties from the contract as a whole and to give effect to that intention consistent with legal principles. *Winfree v. Educators Credit Union*, 900 S.W.2d 285, 289 (Tenn. App. 1995); *Rainey v. Stansell*, 836 S.W.2d 117, 118 (Tenn. App. 1992). In construing contracts, the words expressing the parties' intentions should be given their usual, natural, and ordinary meaning. *Taylor v. White Stores, Inc.*, 707 S.W.2d 514, 516 (Tenn. App. 1985). In the absence of fraud or mistake, a contract must be interpreted and enforced as written, even though it contains terms which may seem harsh or unjust. *Heyer-Jordan & Assocs. v. Jordan*, 801 S.W.2d 814, 821 (Tenn. App. 1990).

With the foregoing principles in mind, we will examine the MDA. We should first note

that we disagree with the trial court's interpretation that the purpose of the life insurance policy was to satisfy **any** of Mr. Gray's obligations under the MDA. The language is quite clear that Mr. Gray agreed to maintain life insurance "to the extent of the amount of his outstanding total alimony obligation." Giving this language its usual, natural and ordinary meaning, it is difficult to see how anything but alimony obligations could be included. Insofar as property and financial rights are concerned, marital disputes involve a division of marital property and spousal support. These are distinctly different and are governed by separate statutes. *See* T.C.A. § 36-4-121 (1996) and T.C.A. § 36-5-101 (Supp. 1998). Moreover, the effect of subsequent events on these awards is vastly different. For example, alimony is subject to future modification while a division of marital property, even though providing for payment of money, is not. *See Towner v. Towner*, 858 S.W.2d 888 (Tenn. 1993). Alimony is not dischargeable in bankruptcy, while future payments as a division of marital property are dischargeable. *See Herrera v. Herrera*, 944 S.W.2d 379 (Tenn. App. 1996). That there is a distinct difference between a division of marital property and alimony is so well recognized that citation of additional authority is unnecessary.

Therefore, we hold that the MDA requires life insurance protection only for Mr. Gray's total alimony obligation. We must now determine the extent of the alimony obligation. A review of the MDA in light of the authorities reveal that the following items are alimony obligations to which the insurance proceeds are to be applied:

> A. Interest on the $375,000.00 cash awarded as a division of marital property in Paragraph 3(A) of the MDA. In this paragraph of the agreement, the interest payment is designated as periodic alimony. Moreover, the agreement's provision in Paragraph 4 <u>Alimony</u> resolves any doubt concerning the nature of the interest payment:
>
> > . . . Beginning May 1, 1996, Husband shall pay an additional Four Hundred Seventy-Five Dollars ($475.00) per month as *periodic alimony* to cover the interest due on the $375,000.00 payment for the division of assets (if Husband pre-pays all or a portion of the $375,000.00 lump sum, set interest payment shall be reduced proportionately to said prepayment). (emphasis added).
>
> B. Payments provided for in Paragraph 4 <u>Alimony</u>, including interest as set out above.
>
> C. Health insurance premiums provided for in Paragraph 5 <u>Health Insurance</u>. *Kemp v. Kemp*, 1988 WL 116368, at *3 (Tenn.

7

App. Nov. 2, 1988) (A prayer for alimony includes health insurance premiums as additional alimony. Such payment constitutes support and maintenance.); *Arnott v. Smolinski*, 210 B.R. 651, 655, 657 (Bankr. S.D. Fla. 1997) (Debtor's obligation to provide health insurance coverage is a nondischargeable support obligation pursuant to 11 U.S.C. § 523 (a)(5)).

D. Automobile insurance premiums as provided for in Paragraph 7 <u>Automobile Insurance</u>. Maintenance of an automobile and the insurance premiums for automobile insurance are additional support and maintenance and thus constitutes alimony. *See Graves v. Hart*, 69 B.R. 626, 628-29 (Bankr. S.D. Fla. 1987).

E. Attorney fees as provided for in Paragraph 10 <u>Court Costs and Attorney Fees</u>. *Herrera v. Herrera*, 944 S.W.2d 379, 390 (Tenn. App. 1996) (attorney fees constitute alimony *in solido*); *Cranford v. Cranford*, 772 S.W.2d 48, 52 (Tenn. App. 1989) (attorney fees are deemed to be alimony).

The Estate also asserts that Ms. Gray is not entitled to the insurance proceeds in excess of the alimony obligation. In *Claiborne v. Claiborne*, No. 03A01-9708-CH-00353, 1998 WL 259893 (Tenn. App. May 14, 1998), we dealt with a similar situation involving insurance proceeds. There, the divorce decree provided that the husband would pay the wife $36,000.00 cash in 72 monthly installments to equalize the division of marital property. He was ordered to maintain a life insurance policy naming the wife as irrevocable beneficiary with a minimum face value of $50,000.00 for the first three years and $25,000.00 for the remaining three years. The husband had an existing policy with a face amount of approximately $140,000.00 and the wife was designated as sole beneficiary. The husband did not make any changes in the policy and died after having paid $12,000.00 of the $36,000.00 debt. The executrix of his estate filed a petition to modify the final judgment and/or for declaratory judgment and asserted that the wife was entitled to receive only $50,000.00 of life insurance proceeds as required by the court. This Court affirmed the judgment of the trial court that Wife was entitled to the entire amount of the policy proceeds. In affirming the trial court, we noted that the parties in a divorce case "are free to make such an agreement as they desire governing insurance, or let the matter stand and be governed by the policy as is." *Id.* at *4.

As in *Claiborne*, we see nothing that is inconsistent with respect to the terms of the divorce judgment (MDA) and the policy beneficiary remaining as designated by Mr. Gray. In *Claiborne,* the judgment required Husband to maintain a policy with a minimum face value of $50,000.00, and we noted that contemplates that a greater amount of insurance might be

maintained. In the case at bar, Husband agreed to provide coverage "to the extent of the amount of his outstanding total alimony obligation." Provisions in both cases provide for a minimum amount of insurance and should not be construed to prohibit a policy with increased coverage. Moreover, in the case at bar, the face amount of the policy was $250,000.00, but Mr. Gray purchased the optional coverage of double indemnity resulting in a much larger amount of insurance proceeds.

In summary, the life insurance policy maintained by Mr. Gray provides that Ms. Gray is the sole designated beneficiary. A provision within an insurance policy which is plain and unambiguous must be applied as it reads. *In re Estate of Clement*, 220 Tenn. 114, 414 S.W.2d 644 (Tenn. 1967); *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471 (Tenn. App. 1996). Mr. Gray could have maintained a life insurance policy without a double indemnity provision, or he could have specified that someone else was to receive the difference between the policy coverage and the amount owed to Ms. Gray. Furthermore, Ms. Gray's rights as the designated beneficiary under the insurance policy were not altered by the MDA. Thus, Ms. Gray, as the sole beneficiary, is entitled to receive the entire amount of the insurance proceeds without any offset to her claim against the Estate except to the extent of the alimony obligation.

The second issue for review is whether the trial court correctly calculated the final amount of Mrs. Gray's claim filed against the Estate. We previously touched on matters pertinent to the claims but will now consider Mrs. Gray's assertion that because no exceptions were filed to the claims they should have been allowed.

The trial court stated in its memorandum opinion that because no exceptions were filed the claim should have been allowed, but continued by stating that the "real question remains regarding whether the insurance proceeds should be credited against the estate's liability on the claim." As for the claims filed against the Estate for what we heretofore noted to be alimony obligations, we agree with the trial court that principles of equity require that Mrs. Gray not receive these claims against the Estate because the proceeds of the insurance policy provided pursuant to the MDA cover the exact same claims. We should note at this point that the record reflects that the Estate paid the claim filed for attorney fees. This was an erroneous payment since the award of attorney fees is an alimony obligation. In any event, no exception was filed to the claim of the amount due as a division of marital property and therefore the claim is a

judgment against the Estate.

In sum, the judgment of the probate court is reversed, and this case is remanded to the probate court for further proceedings to determine the net amount of the claim due Mrs. Gray consistent with this opinion. Costs of the appeal are assessed one-half to Mrs. Gray and one-half to the Estate.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**