# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### October 25, 2012 Session

## IN RE: ESTATE OF DANNY KEITH ELLIS

**Appeal from the Circuit Court for Davidson County**
**No. 10P1507     David Randall Kennedy, Judge**

---

**No. M2012-00585-COA-R3-CV - Filed March 20, 2013**

---

This case involves a dispute between the administrators of the estate of a man who died intestate and the decedent's's former wife over the legal ownership of funds that were held in jointly titled accounts at two banking institutions. After the man's death, his former wife withdrew almost all the funds from the accounts. The administrators asked for a declaratory judgment that the funds belonged to the estate on the basis that the husband and wife had entered into a Marital Dissolution Agreement (MDA) before their divorce which designated those funds as belonging solely to the husband. However, the husband never changed the titles on those accounts, and the ex-wife insisted that the unaltered designation of joint ownership conclusively established her right to the funds after her ex-husband's death. After a hearing, the trial court ruled that the bank accounts were the sole property of the estate, and the former wife was obligated to return the funds. The trial court reasoned that because the MDA was approved by the court and was binding on the parties, it amounted to an amendment to the contract that the parties had created when the accounts were established. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

PATRICIA J. COTTRELL, P.J., M.S., delivered the opinion of the Court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Mark J. Downton, Nashville, Tennessee, for the appellant, Janet Kenyon.

Blaine Holt Smith, Ashley Nation Bassel, Nashville, Tennessee; Robert S. Burns, Sewanee, Tennessee, for the appellees, Barry L. Ellis and Shelia Pugh.

## OPINION

## I. A FINANCIAL DISPUTE

Danny Keith Ellis and Janet Kenyon were married for over fifteen years before they divorced. During their marriage they owned joint accounts at the Educators Credit Union[1] and Suntrust Bank with rights of survivorship. The parties entered into a Marital Dissolution Agreement (MDA) on November 22, 1999, which was incorporated into their final decree of divorce, dated February 1, 2000. Ms. Kenyon was represented by counsel in connection with both the execution of the MDA and the divorce proceedings.

The MDA allocated specific items of property to each party, including real property, vehicles, an annuity fund, retirement accounts, bank accounts, and also allocated debts between the parties. Several clauses in the MDA stated that the agreement was meant to finally and conclusively resolve all the property issues between the parties, including the following:

> It is understood and agreed between the parties that this Agreement is intended to be a final settlement of all property rights and support rights and obligations of the respective parties hereto, and shall constitute a discharge from all claims arising out of their marital relationship, except as provided herein. Each party hereby waives and relinquishes to the other party all rights and claims which each may have or hereafter acquire under the law of any jurisdiction with respect to the other's property, including without limitation, dower, curtesy, statutory allowance, homestead rights, rights to take against the will of the other, inheritance, descent or distribution or the right to act as administrator or representative of the other's estate, except as provided by the terms of this Agreement. **This Agreement applies to all property now owned by Husband and Wife individually or jointly, or any part that either of them may acquire in the future**. This Agreement shall be binding upon and inure to the benefit of the parties hereto, their estates, personal representatives, heirs and assigns. (emphasis added).

The agreed allocation of the property at issue is found at Paragraph 6B of the MDA. That paragraph begins by stating that "[t]he parties agree that the Husband shall take possession of the following items of personal property and shall assume responsibility of any debts thereon and indemnify and hold wife harmless from any liability and/or responsibility

---

[1]By the time of the proceedings herein, Educators Credit Union had changed its name to Cornerstone Financial Credit Union.

thereon." The list of items following this declaration includes the two numbered checking accounts at SunTrust Bank and Educators Credit Union that are at issue.

Danny Ellis died unexpectedly on September 9, 2010, without a will. He was fifty-two years old. The proof showed that Mr. Ellis had not notified the bank of the ownership change on the two disputed accounts prior to his death, and it is undisputed that Ms. Kenyon did not access either of those accounts in the ten years between the parties' divorce and the death of Mr. Ellis. But on October 13, 2010, Ms. Kenyon withdrew all the funds from the Cornerstone account, which amounted to over $148,000. On the same day, she withdrew over $33,500 from the SunTrust account, leaving a balance of $500.

On October 1, 2010, a petition was filed in the Seventh Circuit Court of Davidson County (Probate Division) for intestate administration of the Estate of Danny Ellis and for appointment of personal representatives. The petitioners were Barry Ellis, the decedent's brother; Shelia Pugh, his fiancee; and Grace Routh Ellis, his mother. The petition was duly granted, and the court appointed Barry Ellis and Shelia Pugh as personal representatives and co-administrators of the estate.

On October 21, 2010, the co-administrators filed a verified petition for declaratory judgment and recoupment of funds. They asked the court for a declaration that the funds that were in the two accounts at the time of Mr. Ellis' death became the sole property of his estate and that Ms. Kenyon had no property rights in the accounts or in the funds she withdrew from them. They also asked the court to award them their reasonable expenses, including the attorney fees incurred in order to enforce the MDA.

On the same day, the administrators filed an application for a temporary restraining order and temporary injunction. The administrators asked the court to enjoin Ms. Kenyon from disposing of the funds withdrawn from the disputed accounts and to order her to pay those funds into the court until the proper owner of the accounts and the funds could be determined. The court entered an order granting the requested restraining order and injunction.

Ms. Kenyon filed a motion to dismiss the administrators' petition for declaratory judgment. She contended that because the decedent never changed the ownership designation on the two accounts, they belonged to her as a matter of law. In support of her theory, she cited Tenn. Code Ann. § 45-2-703 which deals with jointly-titled accounts, and the case of *Lowry v. Lowry*, 541 S.W.2d 128 (Tenn. 1976), in which our Supreme Court held that a designation of joint ownership on a bank account trumped a provision in the will of one of the joint owners that bequeathed the funds in the account to the heirs named in the will.

The administrators and Ms. Kenyon both filed motions for partial summary judgment on the question of ownership of the two accounts. On February 22, 2012, the trial court conducted a hearing on the competing motions. In an order entered on March 9, 2012, the court granted the administrators' motion and awarded the proceeds of the account to the estate, with their distribution to be stayed pending the results of appeal. The court reasoned that the MDA was binding on both parties, and that it "was tantamount to an amendment to their contract that existed upon the initial establishment of the Bank Accounts." This appeal followed.

## II. ANALYSIS

A trial court's decision on a motion for summary judgment is reviewed on appeal without a presumption of correctness. *Blair v. West Town Mall,* 130 S.W.3d 761, 763 (Tenn. 2004). Summary judgment may be granted only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56. Since the facts of this case are undisputed, this court must review the record *de novo* to determine whether the trial court correctly found that the co-administrators are entitled to judgment as a matter of law.

### A. The Nature of a Marital Dissolution Agreement

A Marital Dissolution Agreement is essentially a contract between a husband and wife in contemplation of divorce proceedings. *Towner v. Towner*, 858 S.W.2d 888, 890 (Tenn. 1993); *Pylant v. Spivey,* 174 S.W.3d 143, 151 (Tenn. Ct. App. 2003); *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998). To the extent that an MDA is an agreement as to distribution of marital property it does not lose its contractual nature by merger into the decree of divorce and it is not subject to later modification by the court. *Hannahan v. Hannahan*, 247 S.W.3d 625, 627 (Tenn. Ct. App. 2007) (citing *Towner v. Towner*, 858 S.W.2d at 890).

An MDA is subject to the same rules of construction as are other contracts. *Johnson v. Johnson*, 37 S.W.3d 892, 896 (Tenn. 2001). "The cardinal rule of contract construction is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Maggart v. Almany Realtors, Inc*., 259 S.W.3d 700, 703-04 (Tenn. 2008) (citing *Bob Pearsall Motors, Inc. v. Regal Chrysler-Plymouth, Inc.,* 521 S.W.2d 578, 580 (Tenn. 1975)); *Elliott v. Elliott,* 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004). Where there is no ambiguity in the contract, the intentions of the parties are derived from the "usual, natural and ordinary meaning of the contractual language." *Guiliano v. Cleo*, 995 S.W.2d 88, 95

(Tenn. 1999).

There is no ambiguity in the language of the MDA in this case. It clearly states that the two accounts were to become the property of Mr. Ellis. Ms. Kenyon does not suggest that the agreement shows that the parties intended for her to retain any residual interest in those accounts or that there were any irregularities in the formation or execution of the MDA which could defeat the intentions expressed by it.

As with all contracts, the contracting parties to an MDA are bound by a duty of good faith and fair dealing. That duty requires a contracting party to do nothing that will have the effect of impairing or destroying the rights of the other party to receive the benefits of the contract. *Elliott v. Elliott,* 149 S.W.3d at 85. Ms. Kenyon nonetheless contends that she is entitled to all the funds in the two accounts at issue because the failure of Mr. Ellis to remove her name from them gave her a property right that became vested at his death.

We agree that a joint bank account with rights of survival is a binding contract between the joint owners of the account as to the disposition of the funds in the account upon the death of one of the owners. *Lowry v. Lowry*, 541 S.W.2d 128, 131 (Tenn. 1976); *Knight v. Lancaster*, 988 S.W.2d 172, 175 (Tenn. Ct. App. 1998). However, contracts can be modified by the subsequent agreement of the parties. Generally, the last agreement as to the same subject matter that is signed by all the parties supercedes all their former agreements and embodies their true agreement. *Magnolia Group v. Metro Development & Housing,* 783 S.W.2 563, 566 (Tenn. Ct. App. 1989) (citing *Bringhust v. Tual*, 598 S.W.2d 620, 622 (Tenn. Ct. App. 1980)). The MDA in this case was agreed to and signed by both parties. The agreement very clearly stated that Mr. Ellis was to assume sole ownership of the two disputed accounts and that Ms. Kenyon was to be divested of all her interest in those accounts. Thus, the trial court was correct to find that the MDA "was tantamount to an amendment to their contract that existed upon the initial establishment of the Bank Accounts."

### B. The Statutory Argument

Title 45 of the Tennessee Code governs the operation of banks and other financial institutions in this State. Tennessee Code Annotated § 45-2-703 sets out the rights and obligations of such institutions when administering accounts held in the name of more than one party. That statute reads in part,

(a) When a deposit has been made or is hereafter made, in any bank, in the

-5-

names of two (2) or more persons, payable to either, or survivor, the deposit, or any part of the deposit, or any interest or dividend on the deposit, may be paid to either person, whether the others are living or not; and the receipt or acquittance of the person so paid shall be a valid and sufficient release and discharge to the bank for any payment so made.
. . .
(e)(1) A designation of "joint tenants with right of survivorship," or substantially similar language, shall be conclusive evidence in any action or proceeding of the intentions of all named that title vests in the survivor;

Ms. Kenyon argues that section (e)(1) means that the failure of Mr. Ellis to remove her name from the joint accounts prior to his death conclusively proves that he intended that as his survivor she receive the money in it. But a fair reading of Tenn. Code Ann. § 45-2-703 and of the cases interpreting it show that it was enacted for the benefit of the bank, not the account holder. *See Leffew v. Mayes*, 685 S.W.2d 288, 291 (Tenn. 1984); *Griffin v. Prince*, 632 S.W.3d 532, 537 (Tenn. 1982); *Knight v. Lancaster*, 988 S.W.2d 172, 175 (Tenn. Ct. App. 1998).

We note that section (a) in particular absolves a bank from any liability for the payment of funds from a joint account to either joint owner. But it does not affect the rights of the joint owners between themselves. The purpose and effect of the statute is to excuse the bank from having to ascertain the actual intent of the owners by conducting an investigation of legal filings before paying out funds from the account. In reliance on the statute, the two financial institutions could safely allow Ms. Kenyon to withdraw funds from the accounts, without fear of being held liable to the administrators of Mr. Ellis' estate for so doing. But that did not preclude the administrators from seeking reimbursement from Ms. Kenyon on the basis of her agreement under the MDA to waive all her rights to the funds.

## C. Case Law

Ms. Kenyon cites a number of cases to support her contention that a designation of joint tenancy with right of survivorship on a joint bank account trumps all other claims to ownership of that account, starting with *Lowry v. Lowry*, 541 S.W.2d 128. In that case, a widow added her oldest son's name to two savings accounts, making both of them joint accounts with rights of survivorship. She also executed a will, naming the oldest son as executor and declaring that she wanted all her assets to be divided equally between her five children. There was no mention of the joint accounts in the will. After she died, her oldest son transferred the assets of the joint accounts into his own name and divided the remainder of the estate into five equal portions for distribution to the children.

The four younger siblings filed suit to recoup the account assets for the estate. After conflicting decisions below, which primarily focused on the law of gifts, the Supreme Court determined that the oldest son was entitled to all the funds in the accounts. The court focused on the decedent's intent and found that despite the will, there was insufficient evidence to overcome the clear intent expressed in the bank signature card to create a joint tenancy enforceable according to its terms, including the right of survivorship. *Lowry v. Lowry*, 541 S.W.2d at 131.

Ms. Kenyon also cites a series of other cases, which, like the one before us (and unlike *Lowry v. Lowry*) involved an MDA or a property settlement agreement entered into in contemplation of divorce, and the failure of the husband to make subsequent changes to the disposition of the disputed property prior to his unexpected death. But none of those cases involved a joint bank account and all of them can be distinguished from the present one.

In *Bowers v. Bowers*, 637 S.W.2d 456 (Tenn. 1982), the parties' property settlement agreement included a clause releasing the husband from all claims "arising out of the marital relationship." The husband died unexpectedly thirty-four days after the divorce. The wife had been the named beneficiary on a life insurance contract that the husband had purchased, and he did not change the beneficiary designation before his death. The Supreme Court ruled that the wife was entitled to the insurance proceeds, because being a named beneficiary on an insurance policy is not a "property right" and does not "arise out of the marital relationship."

The wife in *Matthews v. Lawrence*, 703 S.W.2d 156 (Tenn. Ct. App. 1985) released her former husband, upon divorce, from all obligations of support arising from the marital relationship, specifically including inheritance rights. During their marriage the husband had designated the wife as the beneficiary of his right to receive a refund of his accumulated contributions to a State of Tennessee retirement account, and the beneficiary designation was not changed before his death. This court ruled, in reliance on *Bowers*, that the wife was entitled to the funds, because the beneficiary designation was a contract right that did not arise out of the marital relationship, and it was not an inheritance right.

*In re Estate of Williams*, M2000-02434-COA-R3-CV, 2003 WL 1961805 (Tenn. Ct. App. Apr. 28, 2003) (rule 11 perm. app. denied Oct. 6, 2003) involved numerous issues, including the proper disposition of three annuity contracts owned by the husband that named the wife as beneficiary. A provision in the parties' MDA announced the husband's intent to remove the wife as the beneficiary on the annuities, but as in *Bowers* and *Matthews*, the husband died without changing the beneficiary designation. This court found that the wife was entitled to remain as beneficiary, finding no meaningful distinction between annuity contracts and the contracts at issue in *Bowers* and *Matthews*.

The primary difference between the present case and the three we have just discussed involves the nature of the interests involved. The joint accounts at issue in the present case meet the definition of marital property, *see* Tenn. Code Ann. § 36-4-121(b)(1)(A), and were appropriately included in the provisions of the Marital Dissolution Agreement. As our courts have stated, once an MDA has been approved by a trial court, both parties obtain a vested interest in the property allocated to them, and neither party may frustrate the other's receipt of his or her vested interest. *Elliott v. Elliott,* 149 S.W.3d at 84 (citing *Johnson v. Johnson*, 37 S.W.3d 892, 897 (Tenn. 2001)).

Ms. Kenyon argues, however, that the distinction our courts have drawn between joint bank accounts and other assets (such as life insurance contracts) that serve as "will substitutes" is illogical and should not be upheld. In support of that proposition, she directs our attention to a law review article that advocates changes in the law to better reflect current realities about the way that property is often conveyed after the death of its owner. John H. Langbein, *The Nonprobate Revolution and the Future of the Law of Succession,* 97 HARVARD LAW REVIEW, 1108 (1984). Ms. Kenyon urges us to adopt the standards recommended in that article.

Whatever the merits of Professor Langbein's recommendations, they have not yet been incorporated into existing Tennessee law, and are therefore irrelevant to the resolution of this case. Further, we are not convinced that the implementation of those recommendations would lead to a result consistent with the intentions of Mr. Ellis. Ms. Kenyon, with advice of counsel, signed the MDA and explicitly gave up any interest in the two accounts. This agreement superceded the joint tenancy designation on the accounts.

We therefore affirm the judgment of the trial court.

## III.

The judgment of the trial court is affirmed. We remand this case to the Circuit Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellant, Janet Kenyon.

_____
PATRICIA J. COTTRELL, JUDGE