# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
May 21, 2014 Session

## JEFFREY WADE MYRICK v. GLORIA DENISE MYRICK

**Appeal from the Chancery Court for Sumner County**
**No. 2007D9      Tom E. Gray, Judge**

---

### No. M2013-01513-COA-R3-CV - **Filed June 19, 2014**

---

The issue presented in this case is whether alimony *in futuro* was properly terminated by the trial court. The parties entered into a marital dissolution agreement, which provided that Husband/Appellee would pay Wife/Appellant alimony *in futuro* until death, remarriage, or "until a third person not the Wife's child, moves into the Wife's residence." The marital dissolution agreement was incorporated, by reference, into the final decree of divorce. Thereafter, Wife's mother moved into Wife's home, and Husband filed a motion to terminate his support obligation based upon the occurrence of the suspending condition. The trial court granted Husband's petition, finding that the parties' agreement for alimony *in futuro* was contractual in nature and that the unambiguous language mandated cessation of Husband's support obligation when Wife's mother moved into Wife's home. Based upon the provision for attorney's fees in the parties' marital dissolution agreement, the trial court also awarded Husband his attorney's fees and costs. Wife appeals. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed
and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and DAVID R. FARMER, J., joined.

Russell E. Edwards, Hendersonville, Tennessee, for the appellant, Gloria Denise Myrick.

Abby R. Rubenfeld, Nashville, Tennessee, for the appellee, Jeffery Wade Myrick.

# OPINION

Jeffery Wade Myrick ("Husband," or "Appellee") and Gloria Denise Myrick ("Wife," or "Appellant") were divorced on March 9, 2009 by final decree entered in the Chancery Court for Sumner County. Prior to their divorce, the parties entered into mediation with a Tennessee Supreme Court Rule 31 mediator. During the mediation, and during the entire divorce proceeding, both parties were represented by counsel. At the conclusion of mediation, on or about February 10, 2009, the parties signed a hand-written document, which outlined the agreed terms of their mediated agreement. These terms were later written into a formal marital dissolution agreement ("MDA"), which was approved by both parties, as well as the trial court, before it was incorporated, by reference, into the final decree of divorce.

As is relevant to the instant appeal, the alimony provision of the MDA provides:

> The Husband agrees to pay to the Wife as alimony *in futuro* the sum of two thousand ($2,000.00) Dollars per month, until the Wife dies or remarries, until the Husband dies, or **until a third person not the Wife's child, moves into the Wife's residence**. The amount shall further be reduced by payments received by Wife from either retirement plan and/or Social Security payments.[1]

(Emphasis added to denote language germane to the appeal).

On November 7, 2011, Husband filed a petition to modify and terminate alimony. As the ground for his petition, Husband averred, *inter alia*, that:

> 9. [Husband] has learned that in approximately August 2011, Patricia Clark, who is the mother of [Wife], moved into the residence of [Wife]; Ms. Clark is not the child of [Wife] and thus the alimony obligation of [Husband] must now terminate.
> 10. [Husband] understands that Ms. Clark has sold her own home and that alterations have been made at the home of [Wife] for Ms. Clark to continue living there on a full time basis.
> 11. Consistent with the agreed terms of the Marital Dissolution Agreement incorporated into the Final Decree of Divorce, the

---

[1] The parties' MDA, at §XV, includes a provision that specifically states that the terms of the MDA contain "the entire understanding of the parties."

alimony obligation of [Husband] thus must now be terminated.

On December 16, 2011, Wife filed a response in opposition to Husband's petition, wherein she specifically denied the allegation that her mother was living with her.

A bench trial was held on April 10, 2013. By order of May 1, 2013, the trial court granted Husband's petition and terminated his alimony obligation. In relevant part, the order states:

> The Court also finds that this case is about a contract with certain conditions. . . .
> The Court further finds that both parties, each with the advice of counsel, signed off on the terms of the agreement, including the alimony provisions, on a handwritten list of terms at the mediation itself. The Court also finds that a month later, the same terms regarding alimony were included in the typewritten Marital Dissolution Agreement, and again approved and signed by both parties with the advice of counsel, after which that MDA was incorporated in the Final Decree of Divorce entered by this Court.

The trial court's findings that the parties freely negotiated and agreed to the MDA terms is supported by Wife's trial testimony:

> Q [to Wife]: So you both [i.e., Wife and Husband] had to agree to the terms before you got divorced, right?
>
> A. Yes.
>
> Q. So you had a chance to put in there that your mom could live with you without terminating alimony, didn't you?
>
> A. I did have that opportunity.

The trial court's order continues, in relevant part, as follows:

> The Court further finds that [after entry of the Final Decree of Divorce]. . . [Wife's] mother . . . came to live with her for 80 to 85 days. The Court finds that [Wife's] mother . . . made arrangements to sell her own home, which sold a short time after

being listed for sale. The Court also finds that [Wife's] mother . . . needed a place to live and to move her furniture. The Court finds that the [Wife's] mother . . . then moved in with [Wife], with the intent to live there at least for several months.

[Wife's] mother . . . had taken certain steps to formalize her move to [Wife's] home. . . such as notifying the Post Office of a permanent change of address to the [Wife's] home . . . . The Court further finds that when [Wife] was informed of this lawsuit, her mother moved out of her home but that the contract between the parties had already been breached. The Court finds that while this may be a harsh result, the MDA contained a contractual condition that only the children of [Wife] could move in with her without her forfeiting the alimony *in futuro* to which the [Husband] had agreed subject to the specific conditions listed.

\*                            \*                            \*

The Court also finds that there is no ambiguity in the alimony provision of the MDA. The Court further finds as a fact that the [Wife] intended for her mother to move in with her, although that intent changed in November 2011 when she realized that the move violated the terms of the MDA.

Based upon the foregoing findings, the trial court terminated Husband's alimony obligation "effective immediately and dating back to the date the Petition was filed."

Following entry of the trial court's order, on April 30, 2013, Husband filed a motion for immediate repayment of alimony overpayment, alleging that he had paid $34,000.00 in alimony "[f]or the 17 months between the date [Husband] filed this action and when this Court ruled in his favor. . . ." On the same day, Husband also filed a separate motion for attorney's fees. As the ground for attorney's fees, Husband cited the parties' MDA provision "mandating that if either party had to return to court to enforce the terms of the Decree, that party shall be awarded a judgment for the reasonable attorney fees he or she incurred as a result." This motion was supported by Husband's attorney's fee affidavit, which was uncontested.

On May 17, 2013, Wife filed a motion to alter or amend the judgment. The trial court heard all pending motions on June 17, 2013. By order of June 21, 2013, the court denied Wife's motion to alter or amend based upon the "unambiguous language of the MDA and

the full record in this case." By the same order, the court granted both of Husband's motions. Husband was awarded judgment for $34,000.00 in alimony overpayment "between the date [] the petition was filed and the ruling of the Court." Husband was awarded attorney's fees and expenses in the total amount of $10,134.99 "pursuant to the agreed requirements of §XVI of the MDA." The trial court stayed the judgment pending appeal.

Wife appeals. She raises four issues as stated in her brief:

> 1. Whether the trial court erred in terminating the ex-husband's alimony obligation.
>
> 2. Whether the trial court erred in awarding the ex-husband his attorney's fees and costs.
>
> 3. Whether the ex-wife should have been awarded her attorney's fees and costs at trial.
>
> 4. Whether the ex-wife should be awarded her attorney's fees and costs incurred on appeal.

Because this case was tried by the court, sitting without a jury, we review the factual determinations *de novo* upon the record with a presumption of correctness. Tenn. R. App. P. 13(d). Unless the evidence preponderates against the trial court's findings, we must affirm, absent error of law. *Id*. In order for the evidence to preponderate against the trial court's findings, it must support another finding of fact with greater convincing effect. *Walker v. Sidney Gilreath & Assocs.*, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000). No presumption of correctness, however, attaches to the trial court's conclusions of law and our review is *de novo*. *Blair v. Brownstone*, 197 S.W.3d 681, 684 (Tenn. 2006) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn.2000)). The interpretation of a written contract, including a marital dissolution agreement, is a matter of law and this Court reviews such questions *de novo* affording the trial court's conclusions no presumption of correctness. *Gray v. Estate of Gray*, 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998)

## Termination of Alimony *in futuro*

In her brief, Wife relies upon Tennessee Code Annotated Section 36-5-121(f), which provides, in pertinent part, as follows:

> (f)(1) Alimony *in futuro*, also known as periodic alimony, is a payment of support and maintenance on a long term basis or

until death or remarriage of the recipient. Such alimony may be awarded when the court finds that there is relative economic disadvantage and that rehabilitation is not feasible, meaning that the disadvantaged spouse is unable to achieve, with reasonable effort, an earning capacity that will permit the spouse's standard of living after the divorce to be reasonably comparable to the standard of living enjoyed during the marriage, or to the post-divorce standard of living expected to be available to the other spouse, considering the relevant statutory factors and the equities between the parties.

(2)(A) An award of alimony *in futuro* shall remain in the court's control for the duration of such award, and may be increased, decreased, terminated, extended, or otherwise modified, upon a showing of substantial and material change in circumstances.

(B) In all cases where a person is receiving alimony *in futuro* and the alimony recipient lives with a third person, a rebuttable presumption is raised that:

(i) The third person is contributing to the support of the alimony recipient and the alimony recipient does not need the amount of support previously awarded, and the court should suspend all or part of the alimony obligation of the former spouse; or

(ii) The third person is receiving support from the alimony recipient and the alimony recipient does not need the amount of alimony previously awarded and the court should suspend all or part of the alimony obligation of the former spouse.

Based upon the foregoing statute, Wife contends that the trial court should have applied a rebuttable presumption as outlined at Tennessee Code Annotated Section 36-5-121(f)(2)(B). Because Wife's mother allegedly provided no additional support to Wife's household, Wife contends that alimony *in futuro* should not have been terminated based upon Wife's mother living with her. On the other hand, Husband contends, and the trial court held, that the provisions of the MDA require the interpreting court to apply contract principles. Because there is no ambiguity in the MDA language that when a "third person not the Wife's child, moves into the Wife's residence," and because Wife's mother did, in fact, move into Wife's home, Husband contends that the trial court did not err in terminating his alimony obligation on contract grounds.

-6-

In the case of ***Honeycutt v. Honeycutt***, 152 S.W.3d 556 (Tenn. Ct. App. 2002), this Court held that the alimony statutes were not applicable where the parties had agreed in an MDA to terms different from those set out in the statues:

> In this particular case, we find T.C.A. § 36-5-101(a)(3)(A) and (B) inapplicable. This is a case of contract interpretation. Our review is governed by the plain language of the parties' MDA. The MDA does not reference, cite, or incorporate this statute with regard to suspension or termination of Husband's alimony obligations. Rather, the MDA explicitly provides for the termination of these obligations upon Wife's death, remarriage, cohabitation with an unrelated male, her becoming qualified for receipt of Social Security benefits, or her reaching age 65, "whichever occurs first."

***Honeycutt***, 152 S.W.3d at 564. We conclude that ***Honeycutt*** is controlling in this case insofar as it requires the application of contract principles to MDAs, when the dispute concerns an express condition regarding the termination of alimony contained in the MDA. Therefore, the trial court did not err in interpreting the express condition placed on the continued payment of alimony *in futuro* as a contract between these parties.

It is well settled that an MDA is contractual in nature and is binding between the parties; therefore, the interpretation of the MDA is "subject to the rules governing construction of contracts." ***Barnes v. Barnes***, 193 S.W.3d 495, 498 (Tenn. 2006) (citing ***Johnson v. Johnson***, 37 S.W.3d 892, 896 (Tenn. 2001); ***Honeycutt***, 152 S.W.3d at 561). This Court has recognized that an MDA is a binding contract on the parties and that the parties' contractual rights vest upon the execution of the MDA:

> An MDA's provisions pertaining to the division of the parties' marital estate are essentially contractual, even after they have been judicially approved and incorporated into a divorce decree. ***Johnson v. Johnson***, 37 S.W.3d at 896; ***Wade v. Wade***, 115 S.W.3d 917, 924 (Tenn. Ct. App.2002); ***Gray v. Estate of Gray***, 993 S.W.2d 59, 63 (Tenn. Ct. App.1998). The parties may not unilaterally modify an MDA once it has been approved by the trial court. ***Johnson v. Johnson***, 37 S.W.3d at 895.

***Elliott v. Elliott***, 149 S.W.3d 77, 84 (Tenn. Ct. App. 2004). As noted above, because "the interpretation of a contract is a matter of law, our review is ***de novo*** on the record with no presumption of correctness in the trial court's conclusions of law." ***Honeycutt***, 152 S.W.3d

-7-

at 561 (citations omitted).

The "cardinal rule" of contract construction is to ascertain the intent of the parties and effectuate that intent consistent with applicable legal principles. *Frizzell Constr. Co. v. Gatlinburg, LLC*, 9 S.W.3d 79, 85 (Tenn. 1999). This principle is also applied when interpreting an MDA:

> [O]ur goal is to ascertain and give effect to the parties' intentions. *Ahern v. Ahern*, 15 S.W.3d 73, 81 (Tenn. 2000). Our search for the parties' intentions must focus on the MDA itself. Each provision of an MDA should be construed in light of the entire MDA, and the language in these provisions should be given its natural and ordinary meaning. We should construe MDAs fairly and reasonably, and we should avoid rewriting these agreements under the guise of "construing" them. *Duvier v. Duvier*, No. 01 A01-9311-CH-00506, 1995 WL 422465, at *3 (Tenn. Ct. App. July 19, 1995) (No Tenn. R. App. P. 11 application filed).

*Elliott*, 149 S.W.3d at 84. When the language of the MDA is plain and unambiguous, courts determine the intent of the parties from the four corners of the contract and enforce its plain terms as written. *See Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000). If, however, the contractual terms are ambiguous and the parties' intent cannot be ascertained from simply reading the language, courts then apply established rules of construction. *Planters Gin Co. v. Federal Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002). "A contract [or MDA] is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Johnson*, 37 S.W.3d at 896 (quoting *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975)). An MDA is not ambiguous merely "because the parties may differ as to interpretations of certain of its provisions." *Id*. at 896 (quoting *Cookeville Gynecology & Obstetrics, P.C. v. Southeastern Data Sys., Inc.*, 884 S.W.2d 458, 462 (Tenn. Ct. App. 1994)).

As in the *Honeycutt* case, here, the parties chose to include, in their MDA, a suspensory condition, i.e., a "condition[ ] precedent that suspend[s] the operation of a contractual promise [in this case, Husband's promise to pay alimony]. . . ." Bryan A. Garner, A Dictionary of Modern Legal Usage 862 (2nd ed. 1995). The language used, i.e., "until a third person not the Wife's child, moves into the Wife's residence," is not ambiguous, and the parties' choice to use this language in their agreement binds them to it. As discussed in *Honeycutt*:

We further note that the parties freely chose to include in the MDA, as a condition for termination of alimony *in futuro*, Wife's *"cohabit[ation] with a man not related to her."* (emphasis added). If it was truly the intention of the parties to premise termination of Husband's alimony payments upon Wife's receipt of financial assistance from a cohabitor, we find no reason for the parties' to elect to explicitly terminate alimony upon cohabitation with an unrelated male, and not upon cohabitation with any third party, such as family members or girlfriends. That said, we find that the parties explicitly contracted for the termination of Husband's alimony obligations in the event Wife cohabits with an unrelated male, regardless of whether said male was providing Wife with financial assistance or support.

*Honeycutt*, 152 S.W.3d at 564. Because the parties here chose the suspensory condition, and are thus bound by it, the only question is whether the evidence preponderates against the trial court's finding that Wife's mother did, in fact, move into the Wife's residence. If the evidence supports the trial court's finding, then the suspensory condition has been met, and the trial court correctly held that Husband's obligation to pay alimony ceased upon the occurrence of that condition, i.e., Wife's mother moving into Wife's home.

According to the record, Husband testified that in the late summer or early fall of 2011, he learned, from the parties' adult children, that Wife's mother had moved into Wife's home . Husband called Wife to express his condolences on the loss of her father and, during that conversation, he testified that Wife admitted that her mother was living in her home:

> A. I called [Wife] to express my sorrow that her father ha[d] passed away. . . . And in the course of the conversation [Wife] started to tell me, well, you understand that Mom has moved in with me.
>
> And I said, yeah, I've heard that through the kids.
>
> And she said, it was only a matter of time. It just, you know, made sense to do it. And she is here with me now that Dad is gone.

Wife testified that at the time she was served with the instant lawsuit, her mother "was staying with me until we could find her a solution . . . [t]o her living conditions." It is

-9-

undisputed that Wife's mother filed a permanent change of address form with the Post Office:

> Q [to Wife]. So you're aware that your mom sent in a change of address card, correct?
>
> A. I was, yes.
>
> *                          *                          *
>
> Q. Okay. And it was a permanent change of address card, wasn't it?
>
> A. I guess whenever you do a change of address it is permanent. . . .
>
> *                          *                          *
>
> Q. So you were getting her bills—her change of address changed everything to your home, right?
>
> A. Right.

Wife further testified that her mother moved some of her furniture into Wife's home, and that her mother stayed with her for approximately three months.

The parties' daughter, Ashton Leigh Sanders, was deposed during discovery. She was unavailable to testify at the hearing; however, her deposition was admitted as Trial Exhibit 1. Therein, she testified, in relevant part, as follows:

> Q. At one point your grandmother was staying there [i.e., at Wife's home], wasn't she?
>
> A. Yes. . . . I don't remember exactly when she moved in. I couldn't give you dates of when she moved in or moved out. It wasn't a very long period of time.

Here, the only question is whether Wife's mother "move[d] into Wife's residence." Despite the fact that Wife's mother eventually moved out of Wife's residence, the evidence supports a finding that Wife's mother did "move[] into Wife's residence" for a period of

time. Wife's mother's stay at Wife's residence was clearly not simply a visit: Wife's mother changed her permanent address to Wife's address and moved not only her clothes, but also some of her furniture to Wife's residence. Thus, the fact that Wife's mother eventually moved out of her home after the filing of this lawsuit, and the question of whether Wife's mother provided any financial support to Wife are both irrelevant to the question of whether the suspensory condition occurred. From the totality of the circumstances, and the record as a whole, we cannot conclude that the evidence preponderates against the trial court's finding that Wife's mother did, in fact, move into Wife's home. Accordingly, the suspensory condition was triggered and the trial court did not err in relieving Husband of his obligation to pay alimony *in futuro*.

### Attorney's Fees

The parties' MDA, at §XVI, further provides that:

> In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this agreement, and if successful, he or she shall also be entitled to a judgment for reasonable expenses including attorney fees incurred in prosecuting the action.

We review the trial court's ruling on attorney's fees under an abuse of discretion standard. *See, e.g., Owens v. Owens*, 241 S.W.3d 478, 496 (Tenn. Ct. App. 2007). An abuse of discretion occurs when a trial court's "decision is not supported by the evidence, when it applies an incorrect legal standard, [or] when it reaches a decision which is against logic or reasoning that causes an injustice to the party complaining." *Id*. at 501. This Court must presume that the trial court's discretionary decision was correct, and must consider the evidence in the light most favorable to the decision of the trial court. *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010). The abuse of discretion standard does not allow this Court to substitute its judgment for that of the trial court. *Williams v. Baptist Mem'l Hosp.*, 193 S.W.3d 545, 551 (Tenn. 2006).

The section of the parties' MDA cited above mandates an award of attorney's fees to the successful party in a "reasonably necessary" proceeding to procure enforcement of the MDA terms. Here, there is no indication that Husband's petition was not reasonable, especially in light of our holding above that the suspensory condition did occur. In addition, Husband's request for attorney's fees was supported by the uncontested fee affidavit of his attorney. It appears that the trial court applied the plain language of the MDA in awarding Husband his fees, and we cannot find an abuse of discretion. Moreover, the amount of the fees is supported by the record. Simply put, Husband, as the prevailing party is entitled to

-11-

his attorney's fees under the MDA; Wife, as the losing party, is not.

Concerning Wife's request for an award of attorney's fees and costs associated with this appeal, we note that the decision whether to award attorney's fees on appeal is a matter within the sole discretion of this Court. **Hill v. Hill**, No. M2006-02753-COA-R3-CV, 2007 WL 4404097, at *6 (Tenn. Ct. App. Dec. 17, 2007) (citing **Archer v. Archer**, 907 S.W.2d 412, 419 (Tenn. Ct. App .1995)). The parties' MDA, as discussed above, provides for the award of attorney's fees to the prevailing party, which, in this case, is Husband. In light of the clear language in the parties' MDA, we respectfully deny Wife's request to recoup her fees and costs for this appeal.

For the foregoing reasons, we affirm the trial court's order, and remand for further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed to the Appellant, Gloria Denise Myrick, and her surety.

_____
J. STEVEN STAFFORD, JUDGE