FILED
09/14/2021
Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 8, 2021 Session

## LEE ANN POLSTER v. RUSSELL JOSEPH POLSTER

**Appeal from the Chancery Court for Montgomery County**
**No. MC-CH-CV-DI-20-271      Ted A. Crozier, Judge**

———————————————————

### No. M2020-01150-COA-R3-CV

———————————————————

In this divorce case, a husband appeals the trial court's denial of his motion to alter or amend, arguing that the court should not have granted the divorce on the ground of irreconcilable differences or approved the parties' marital dissolution agreement when the husband purportedly withdrew his consent to the divorce, lacked the capacity to enter into a marital dissolution agreement, and was under duress at the time he executed it. He also argues that his due process rights were infringed. Upon our review, we affirm the judgment of the trial court. We also award the wife her attorney's fees for this appeal and remand to the trial court for a calculation of those fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded**

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and W. NEAL MCBRAYER, J., joined.

John T. Maher, Clarksville, Tennessee, for the appellant, Russell Joseph Polster.

Steven C. Girsky, Clarksville, Tennessee, for the appellee Lee Ann Polster.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Lee Ann Polster ("Wife") and Russell Polster ("Husband") were married in June 1992. They separated in February 2020, and Wife filed a complaint for divorce on April 23, 2020, based, in part, on the ground of irreconcilable differences.

On May 4, Husband and Wife executed a marital dissolution agreement ("MDA"), which was filed with the court the next day. It provided that the marriage should be terminated on the ground of irreconcilable differences and that Husband should pay Wife alimony in the amount of $500 per month for 60 months. The MDA also provided for distribution of the marital home and their personal property, specifically referencing two vehicles and two retirement accounts, and stated the parties' intentions that the marital debts were to be "paid down by the retirement accounts." Husband was unrepresented at the time, but the MDA contains a paragraph stating in part that he "was given the opportunity to consult with counsel of his own choosing."

By notice filed May 7 and mailed to Husband at the marital residence, the matter was set for final hearing on June 24, 2020. At the time, in-person court proceedings had largely been suspended due to the COVID-19 pandemic. On the afternoon of June 24, Husband, acting pro se, filed a pleading styled "Extension to Final Notice of Final Hearing on Uncontested Divorce." The pleading states:

> Lee Ann Polster means everything to me. If a divorce is the only thing I can do to make her happy, an uncontested divorce is what she will get. . . . All I am asking for is 3 months of court-ordered marital counseling . . . . I just would like every possibility to save my marriage if possible. I am willing to pay for the counseling, and I will even pay all her attorney and court fees. If she agrees after the 3 months to continue working this out, her attorney can keep papers on file for an immediate divorce in case she decides to follow through with the divorce of which I will pay for.
>
> You can sign off on the dispersion of our marital property, I don't care about that. At this point I feel she feels compelled to follow through with the divorce because she has gone this far. All I care about is saving my marriage to my God given soul mate[.] I beg you to please grant my request.

A few hours later, the court clerk filed the final decree of divorce that had been approved by the trial court.[1] In the final decree, the trial court found that "[Husband] has not contested or denied that irreconcilable differences have arisen between the parties" and that "the parties . . . have made adequate and sufficient provisions by written agreement for an equitable distribution of any property rights between the parties." The court incorporated the MDA into the final decree.

---

[1] The trial court clerk stamped Husband's pleading as filed at 1:49 p.m. on June 24. It is not clear whether the trial court received this pleading prior to its consideration of the entire record and its entry of the final decree, which was filed by the court clerk at 4:30 p.m. that same day. Additionally, we observe that the final decree, which was prepared by counsel for Wife, states that the matter was heard on June 26. This appears to be a scrivener's error, as the order bears the court's handwritten notation that it was entered on June 24, as does the date of the court clerk's file stamp.

Husband subsequently retained counsel, and on July 17, he filed a sworn motion to alter or amend and/or set aside the final decree and the MDA. In the motion, he sought that the court alter, amend, or set aside the property division or the entire final decree because he was not represented by counsel throughout the proceedings and was under duress and depressed at the time Wife presented the MDA to him. He alleged that Wife "fraudulently and intentionally misrepresented her intentions of the Marital Dissolution Agreement to Defendant" and that the MDA was "utterly inequitable and should be set aside in its entirety." He claimed that he received notice of the June 24 hearing, which "led [him] to believe he could appear at the hearing and present his position to the judge," so he "appeared at the courthouse on June 24, 2020, but was not allowed to enter." Wife responded, denying most of the allegations of husband's motion and attaching two exhibits illustrating Husband's involvement in the drafting of the MDA.

Husband's counsel set the matter for a hearing on the pleadings on July 31, and on that day, the trial court entered an order, denying Husband's motion on the basis that:

> [Husband] may have made a bad deal but had ample time to seek counsel or repute his agreement prior to the finalization of his divorce. No showing of how a soon to be ex-wife could overcome the free will of a fifty year old man. Doesn't meet the threshold of mistake, inadvertence, excusable neglect, or fraud required by TRCP 60.02.

Husband has appealed, raising the following issues for our review:

1. Whether the trial court lacked the legal authority to enter the final decree of divorce on the grounds of irreconcilable differences after [Husband] withdrew consent.
2. Whether the trial court lacked legal authority to incorporate the MDA into the final decree of divorce after [Husband] withdrew consent to the MDA.
3. Whether the trial court erred in not reviewing the MDA for fairness and equity after [Husband] withdrew consent and requested a hearing.
4. Whether the trial court erred by not allowing [Husband] to appear at the final hearing.
5. Whether the trial court erred by hearing [Husband]'s Rule 59 motion on the pleadings.

For her part, Wife contends that the trial court properly entered the final decree of divorce on the ground of irreconcilable differences. She also requests her attorney fees on appeal.

STANDARD OF REVIEW

This case was tried by the court sitting without a jury; as such, we review the trial court's findings of fact de novo with a presumption of correctness, unless the evidence preponderates against those findings. *McGarity v. Jerrolds*, 429 S.W.3d 562, 566 (Tenn.

- 3 -

Ct. App. 2013). For the evidence to preponderate against a trial court's finding of fact, the weight of the evidence must "'demonstrate[] that a finding of fact other than the one found by the trial court is more probably true.'" *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015) (quoting *Nashville Ford Tractor, Inc. v. Great Am. Ins. Co.*, 194 S.W.3d 415, 425 (Tenn. Ct. App. 2005)); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court conducts a *de novo* review of the trial court's resolution of questions of law, with no presumption of correctness. *Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014); *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

ANALYSIS

I.      Husband's Purported Withdrawal of Consent

Husband's first three issues attack the validity of the final decree and the MDA. All three issues center on his belief that he withdrew his consent to the uncontested divorce and to the entry of the MDA and communicated that fact to the court prior to its entry of the final decree by filing a pleading and attempting to appear in court on the date the court heard the matter. Husband argues that the contract defenses of incapacity, duress and coercion, and, for the first time ever, unconscionability apply. Thus, he asserts that the court should have reviewed the MDA for fairness and equity and set it aside.

In support of his argument, Husband relies on the case of *Nahon v. Nahon*, which held, "[A] valid consent judgment can not be entered by a court when one party withdraws his consent and this fact is communicated to the court prior to entry of the judgment." *Nahon v. Nahon,* W2004-02023-COA-R3CV, 2005 WL 3416415, at *4 (Tenn. Ct. App. Dec. 14, 2005) (quoting *Harbour v. Brown for Ulrich*, 732 S.W.2d 598, 599 (Tenn. 1987)). However, the holding in *Nahon* has been superseded by the Tennessee Supreme Court's decision in *Barnes v. Barnes*, 193 S.W.3d 495 (Tenn. 2005). *See Olson v. Beck*, No. M2013-02560-COA-R3CV, 2015 WL 899381, at *4 (Tenn. Ct. App. Feb. 27, 2015) (citing *Barnes v. Barnes*, 193 S.W.3d 495 (Tenn. 2006)). In *Barnes*, the Tennessee Supreme Court held that "[a] marital dissolution agreement may be enforceable as a contract even if one of the parties withdraws consent prior to the entry of judgment by the trial court, so long as the agreement is otherwise a validly enforceable contract." *Barnes*, 193 S.W.3d at 499. "Husband cannot repudiate the contract simply by withdrawing his consent prior to the court's approval." *Olson*, 2015 WL 899381, at *4.

As in *Barnes*, the MDA in this case was reduced to writing and signed by both parties, as witnessed by a notary public. Thus, it is a contract, and its enforceability is governed by contract law. *Barnes*, 193 S.W.3d at 499; *see also Olson*, 2015 WL 899381, at *4. Because construction of a contract is a matter of law, our review of Husband's contentions as to the invalidity of the contract, which will be discussed in section III of our analysis, is de novo with no presumption of correctness. *Barnes*, 193 S.W.3d at 498; *see*

*also Vick v. Hicks*, No. W2013-02672-COA-R3-CV, 2014 WL 6333965, at *2 (Tenn. Ct. App. Nov. 17, 2014)*; Gray v. Estate of Gray,* 993 S.W.2d 59, 63 (Tenn. Ct. App. 1998)).

Assuming the June 24 pleading Husband filed was before the trial court when it heard the case, nowhere in that pleading did Husband assert that he was under duress or suffering from a mental incapacity at the time he entered into the MDA. Neither did he assert any statement that could be relied upon to show that the property division was inequitable.

We recognize that Husband was proceeding pro se at this point and is thus entitled to some leeway; accordingly, our focus is on the substance, not the form, of the papers he filed. *See Young v. Barrow*, 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003).

Husband argues that "by requesting a hearing and filing his Motion to Extend Time, [he] contested that the parties did not have irreconcilable differences." We do not agree with his characterization, as the second sentence of the pleading illustrated his assent to the pending divorce: "If a divorce is the only thing I can do to make her happy, an uncontested divorce is what she will get." Furthermore, in requesting three months of counseling, Husband noted that "her attorney can keep papers on file for an immediate divorce in case she decides to follow through with the divorce . . . ." Husband styled his pleading as "Extension to Final Notice of Final Hearing on Uncontested Divorce," and it contains only his request that the court require the parties to attend marriage counseling. At best, this pleading could be construed as a motion to continue. But the reality is that nowhere in Husband's June 24 pleading did he make any statement that can be reasonably construed to indicate that he was withdrawing his consent to a divorce based on the parties' irreconcilable differences.

Even if we were to construe Husband's June 24 pleading as contesting the uncontested nature of their divorce, the trial court's entry of the final decree and MDA still would not constitute error. Tennessee's irreconcilable differences statute provides:

> If there has been a contest or denial of the grounds of irreconcilable differences, no divorce shall be granted on the grounds of irreconcilable differences. However, a divorce may be granted on the grounds of irreconcilable differences where there has been a contest or denial, if a properly executed marital dissolution agreement is presented to the court.

Tenn. Code Ann. § 36-4-103(e). The parties executed the MDA fifty days prior to the court's consideration of the record and entry of the final decree. Importantly, Husband's June 24 pleading contained no statement that could have led the court to conclude that he no longer agreed to the terms of the MDA or that he was experiencing duress or suffering from a mental incapacity when he executed it. The pleading also contained no statement

indicating that he believed that the MDA's property division was inequitable.[2]   To the contrary, he said that the court "can sign off on the dispersion of our marital property, I don't care about that." Moreover, the MDA contains the following language:

> (17) RECONCILIATION: This agreement shall take effect immediately upon the signing of the same by the parties, subject to the approval of the court granting the parties' divorce. It is the parties' intention that a reconciliation, either temporary or permanent, shall in no way affect the provisions of this agreement having to do with the settlement and disposition of their property rights in their respective realty, if any, and personal property, unless a new agreement is entered into in writing mutually revoking and rescinding this agreement and entering into a new one.

Thus, even if Husband's desire to participate in court-ordered counseling had been granted and resulted in reconciliation with Wife, it would not have an effect on the terms of the MDA. The pleading he filed on June 24 provided no basis for the court to invalidate the MDA.

In conclusion, at the time the trial court entered the divorce decree, Husband's only pleading contained nothing that could have led the court to conclude that Husband had withdrawn his consent to the divorce or believed the MDA was invalid. Thus, the court had the authority to grant the parties an irreconcilable differences divorce. Tenn. Code Ann. § 36-4-103(e). We discern no merit to the first three issues raised by Husband.

II.     Due Process

Husband next asserts that his constitutional right to due process was violated when "the trial court did not allow [him] to enter the court room on the day of the final hearing to present his objections."

Procedural due process requires that litigants "'be given an opportunity to have their legal claims heard at a meaningful time and in a meaningful manner.'" *State ex rel. Groesse v. Sumner*, 582 S.W.3d 241, 258 (Tenn. Ct. App. 2019) (quoting *Lynch v. City of Jellico*, 205 S.W.3d 384, 391 (Tenn. 2006)).  Notice and a meaningful opportunity to be

---

[2] Husband argues in his appellate brief that he "attempted to appear at the courthouse on the 24th day of June 2020, the day of the final hearing, and was denied entry . . . therefore den[ying Husband] an opportunity to argue fairness and equity in regard to the Marital Dissolution Agreement." His statement is unsupported by a citation to evidence in the record, in contravention of Rule 27(a)(7)(A) of the Tennessee Rules of Appellate Procedure and Rule 6(b) of the Rules of the Court of Appeals of Tennessee, and the pleading he filed that day provides no support for his argument on appeal that he believed the MDA was unfair or inequitable.

heard are essential components of procedural due process. *Manning v. City of Lebanon*, 124 S.W.3d 562, 566 (Tenn. Ct. App. 2003).

In the case of an uncontested divorce, Tennessee Code Annotated "section 36-4-103(b) and (c) 'do[] not require a formal hearing unless the court finds that the parties have not made adequate and sufficient provision for . . . the equitable settlement of any property rights.'" *Trigg v. Trigg*, No. E2014-00860-COA-R3-CV, 2015 WL 66544, at *8 (Tenn. Ct. App. Jan. 5, 2015) (quoting *Vaccarella v. Vaccarella,* 49 S.W.3d 307, 313 (Tenn. Ct. App. 2001)). In concluding that the trial court was not required to conduct a formal hearing in the context of an irreconcilable differences divorce, the *Trigg* court noted that "'[i]f the parties had wished to request a hearing at the time the judge signed the final decree, they were free to do so.'" *Trigg*, 2015 WL 66544, at *8 (quoting *Vaccarella,* 49 S.W.3d at 314).

Relying on *Trigg*, Husband contends that "after receiving a Notice of Hearing, [he] was led to believe he could appear at the hearing and present his position to the judge. [He] appeared at the courthouse on June 24, 2020, but was not allowed to enter." He also argues in his brief that he "requested a hearing, and that request was subsequently denied by the trial court," such that the trial court's denial of that request violated his due process rights. Husband fails to cite to a location in the record where he made such a request, and our review of the record reveals no such request or subsequent denial by the trial court.

In light of his failure to request a hearing, his reliance on *Trigg* is misplaced. As in *Trigg*, there is nothing in the record before us to indicate that Husband actually requested a hearing before the trial court prior to the entry of the MDA. His June 24 pleading only requested court-ordered counseling and invited the court to "sign off on the dispersion of our marital property."

Further, Husband's arguments make no mention of the state of affairs under which the trial court was operating during the pendency of divorce. At the time, "[t]he State of Tennessee, like the entirety of the United States, [wa]s in the midst of an unprecedented public health crisis due to COVID-19. . . . In response to the COVID-19 pandemic, the Governor declared a state of emergency on March 12, 2020." *Fisher v. Hargett*, 604 S.W.3d 381, 386-87 (Tenn. 2020). On March 13, 2020, the Tennessee Supreme Court declared a state of emergency for the Judicial Branch of Tennessee and suspended in-person court proceedings, subject to certain exceptions not applicable here. *In re: COVID-19 Pandemic*, No. ADM2020-00428 (Tenn. Mar. 13, 2020) (order suspending in-person court proceedings).[3]

---

[3] The suspension was extended numerous times, ultimately through March 2021, and was also modified so as to require the various judicial districts to author plans setting forth procedures that would allow in-person proceedings to safely take place. *See In re: COVID-19 Pandemic,* No. ADM2020-00428 (Tenn. Mar. 25, 2020) (order continuing the suspension of in-person court proceedings and extending deadlines); *In re: COVID-19 Pandemic,* No. ADM2020-00428 (Tenn. April 24, 2020) (order modifying the suspension of in-person court proceedings, extending deadlines further, and stating that "Courts should

At all times pertinent, the trial court was operating under a Supreme Court-approved plan that limited capacity and provided that motions and bench trials would be "decided on pleadings or WebEx/Zoom unless all attorneys and Judge agree to an in-person hearing that will be specially scheduled by the Judge's assistant"; it also provided that "Uncontested divorces (attorney represented and self-represented litigants) will be decided on the pleadings." TNCOURTS.GOV, *19th Judicial District Comprehensive Plan Regarding Limited In-Person Proceedings Pursuant to Supreme Court Order Entered April 24, 2020*, http://www.tncourts.gov/sites/default/files/docs/19th_jd_comprehensive_plan_7.pdf (last visited August 26, 2021).

So, it is not accurate for Husband to state that the trial court "did not allow [him] to enter the court room on the day of the final hearing to present his objections." No one was permitted in any courtroom without certain procedures being followed, and as we have previously stated in this opinion, Husband filed no pleading that requested a hearing of any sort or otherwise indicated a lack of consent to the matter being heard on the pleadings. While Husband may have wished to appear in person on June 24, the court could not have been aware of his desire, given Husband's failure to request an in-person or teleconferenced hearing.

Upon retaining counsel and filing the motion to alter or amend and/or set aside the final decree, Husband was given another opportunity to be heard in person or via teleconference if he so desired. However, the notice of hearing he filed pertaining to that motion stated that the hearing would be "on the pleadings." Accordingly, he received precisely the amount of process he requested: a hearing on the pleadings. Under the facts of this case, we discern no infringement of Husband's right to due process.

III.    Husband's Motion to Alter or Amend or Set Aside the Final Decree

Husband argues that the trial court abused its discretion in denying his motion to alter or amend by not allowing him to present evidence outside the pleadings. As we have already pointed out in the previous section, Husband's notice of hearing on this motion states, "Take notice that a Motion to Alter or Amend, to Set Aside Marital Dissolution Agreement and/or Set Aside Final Decree of Absolute Divorce will be heard *on the pleadings* on July 31, 2020, at 9:00 a.m." (Emphasis added.) Husband received precisely the type of hearing he requested, and we discern no error in the court's deciding the matter on the pleadings alone, as neither Rule 59.04 or 60.02, nor any other authority we have

---

continue to conduct as much business as possible by means other than in-person court proceedings. Courts are encouraged to continue and even increase the use of telephone, teleconferencing, email, video conferencing or other means that do not involve in-person contact. All of these methods should be the preferred option over in-person court proceedings."); *In re: COVID-19 Pandemic,* No. ADM2020-00428 (Tenn. Feb. 12, 2021) (order lifting the suspension of in-person court proceedings in termination of parental rights cases as of March 1, 2021; jury trials as of March 31; and all other proceedings as of March 15).

discovered in our research, contains a requirement that a separate evidentiary hearing be held on such motions, especially when one is not requested.

Turning to the merits of the trial court's decision on Husband's motion, Husband cited both Tennessee Rules of Civil Procedure 59.04 and 60.02 as the bases of his "Motion to Alter or Amend, to Set Aside Marital Dissolution Agreement and/or Set Aside Final Decree of Absolute Divorce." The motion did not specify which provision of Rule 60.02 warranted relief. Because Husband filed his motion on July 17, or within thirty days of the entry of the divorce judgment, it was not a "final judgment" to which Rule 60 applies. *Trigg*, 2015 WL 66544, at *4 n.4 (citing *Ferguson v. Brown,* 291 S.W.3d 381, 387 (Tenn. Ct. App. 2008)). Thus Rule 59.04 applied, not Rule 60.02. *Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012) ("[F]or thirty days after entry of a final judgment, motions for relief should be premised upon Rule 59.").

The judgment of a court should not "be lightly changed, altered, amended or set aside, but only done upon very clear, convincing, cogent evidence that a true injustice has been done to the complaining party and that the complaining party is in no wise responsible, or termed in another way, negligent in protecting that party's interest." *Myers v. Myers*, 891 S.W.2d 216, 220 (Tenn. Ct. App. 1994) (citing *Tenn. State Bank v. Lay,* 609 S.W.2d 525, 527 (Tenn. Ct. App. 1980)). Motions to alter or amend a judgment pursuant to Rule 59 may be granted "'(1) when the controlling law changes before a judgment becomes final, (2) when previously unavailable evidence becomes available, or (3) when, for sui generis reasons, a judgment should be amended to correct a clear error of law or to prevent injustice.'" *Whalum v. Marshall,* 224 S.W.3d 169, 175 (Tenn. Ct. App. 2006) (quoting *Bradley v. McLeod,* 984 S.W.2d 929, 933 (Tenn. Ct. App. 1998)); *see also Vaccarella*, 49 S.W.3d at 312. We review the court's decision on a Rule 59.04 motion to alter or amend a judgment under the abuse of discretion standard and consider whether "the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that cause[d] an injustice to the complaining party." *Discover Bank,* 363 S.W.3d at 487. (quoting *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010)).

While the trial court construed the motion solely as a Rule 60.02 motion, we discern no reversible error, as a Rule 59.04 motion is reviewed "using standards similar to those used to review [Rule] 60.02(1) motions on similar grounds." *Madu v. Madu,* No. M1999-02302-COA-R3-CV, 2000 WL 1586461, at *5 (Tenn. Ct. App. Oct. 25, 2000).

Husband's motion argued that the MDA should be set aside because he signed it under duress, while suffering from "severe depression," and that Wife had engaged in fraudulent and intentional misrepresentation in getting him to sign it. He also argued that the MDA was "utterly inequitable." Thus, Husband's motion appears to be based on the third category of relief available—that the judgment should be amended to prevent injustice. *See Whalum,* 224 S.W.3d at 175. We note that Husband's motion presented these

defenses to an enforceable contract to the trial court for the first time. While a motion to alter or amend a judgment "'should not be used to raise or present new, previously untried or unasserted theories or legal arguments,'" *U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co.*, 410 S.W.3d 820, 827 n.2 (Tenn. Ct. App. 2012) (quoting *In re M.L.D.,* 182 S.W.3d 890, 895 (Tenn. Ct. App. 2005)), we will grant Husband some leeway given his *pro se* status until after the entry of the divorce decree and because the trial court itself considered Husband's arguments. *See Young*, 130 S.W.3d at 62-63; *see also Hessmer v. Hessmer*, 138 S.W.3d 901, 903 (Tenn. Ct App. 2003). We will not, however, entertain his argument that the MDA was unconscionable, as he raises that argument for the first time on appeal.[4] *Barnes*, 193 S.W.3d at 501 ("Issues not raised in the trial court cannot be raised for the first time on appeal.").

We first examine Husband's arguments relative to his capacity to contract. Husband states that his "severe depression," which he believes resulted from his devastation and surprise when Wife "abruptly ask[ed] for a divorce," rendered him incapacitated to enter the MDA.

In the case of *Beem v. Beem*, No. W2009-00800-COA-R3-CV, 2010 WL 1687782, (Tenn. Ct. App. Apr. 28, 2010), the husband sought to have the court set aside a marital dissolution agreement based upon his asserted lack of mental capacity to enter into such an agreement. This Court observed:

---

[4] In the context of making his unconscionability argument, Husband's brief makes passing reference to the MDA's inequitable division of the parties' assets, but he has not raised the division of assets as an issue on appeal. Thus, pursuant to Rules 13(b) and 27(a)(4), (b) of the Tennessee Rules of Appellate Procedure, we deem that issue to be waived. Even if he had properly raised this as an issue, his brief contains no citations to evidence in the record demonstrating the extent of the marital estate or values of the items it contained, and the MDA is silent as to the values of much of the couple's real and personal property. The table Husband includes in his reply brief does not comply with Rule 7 of the Rules of the Court of Appeals and merely contains "[v]alues . . . provided by [Husband]" that are completely unsupported by reference to the record. Importantly, as we ultimately determine in this appeal that Husband has provided no valid defenses to the enforcement of the MDA, that agreement must be enforced as written. "[O]ne of the bedrocks of Tennessee law is that our courts are without power to make another and different contract from the one executed by the parties themselves." *Eberbach v. Eberbach*, 535 S.W.3d 467, 478 (Tenn. 2017) (citing *Dubois v. Gentry*, 184 S.W.2d 369, 371 (Tenn. 1945)). Indeed, this Court has held:

> The courts must interpret contracts as they are written, and are not at liberty to make a new contract for parties who have spoken for themselves[.] Accordingly, the courts do not concern themselves with the wisdom or folly of a contract, and will not relieve parties from contractual obligations simply because they later prove to be burdensome or unwise[.]

*Sikora v. Vanderploeg*, 212 S.W.3d 277, 286 (Tenn. Ct. App. 2006) (citations omitted).

[I]t is rare indeed for a court to find that a contract is unenforceable based on the unsound emotional state of a contracting party. The party seeking to avoid a contract on this basis must show that he or she "had no reasonable perception or understanding of the nature or terms of the contract." *Roberts* [*v. Roberts*], 827 S.W.2d [788] at 791-92 [(Tenn. Ct. App. 1991)]. This Court has explained the burden of proof for a party seeking to avoid a contract:

> Thus, persons will be excused from their contractual obligations on the ground of incompetency only when (1) they are unable to understand in a reasonable manner the nature and consequences of the transaction or (2) when they are unable to act in a reasonable manner in relation to the transaction, and the other party has reason to know of their condition.

*McMahan v. McMahan,* No. E2004-03032-COA-R3-CV, 2005 WL 3287475, at *7 (Tenn. Ct. App. Dec. 5, 2005).

*Id.* at *8. Husband asserted no facts in his motion to alter or amend that satisfy either prong. Wife's response and its attached exhibits show that Husband refused to sign several previous drafts of the MDA and had input on the version that was finally signed. His statements in his June 24 pleading invited the trial court to "sign off on the dispersion of our marital property." Husband has set forth no evidence that he was suffering from a lack of mental capacity when he signed the MDA such that it should have been set aside. Accordingly, we discern no abuse of discretion in the trial court's refusal to grant the motion to alter or amend relative to Husband's purported lack of capacity.

Turning to the issue of Husband's duress, Husband argues that, due to Wife's representations that "if he just signed the Marital Dissolution Agreement, they could work things out and continue to be married," he was experiencing duress and coercion at the time he executed the MDA.

"A party wishing to avoid a contract on the grounds of duress must prove that in forming the contract he or she had been forced or coerced to do an act contrary to his or her free will." *Holloway v. Evers*, No. M2006-01644-COA-R3-CV, 2007 WL 4322128, at *9 (Tenn. Ct. App. Dec. 6, 2007). Our Supreme Court has defined duress as:

> "'[A] condition of mind produced by the improper external pressure or influence that practically destroys the free agency of a party, and causes him to do and act or make a contract not of his own volition, but under such wrongful external pressure.'" *Rainey v. Rainey,* 795 S.W.2d 139, 147 (Tenn. Ct. App. 1990) (quoting *Simpson v. Harper,* [] 111 S.W.2d 882, 886 ([Tenn. Ct. App.] 1937)). When such pressure exists "is a question to be determined

by the age, sex, intelligence, experience and force of will of the party, the nature of the act, and all the attendant facts and circumstances." *Id.* (quoting 10 Tenn. Jur. *Duress and Undue Influence* § 3 at 112 (1983)).

*Barnes*, 193 S.W.3d at 500. "Duress consists of 'unlawful restraint, intimidation, or compulsion that is so severe that it overcomes the mind or will of ordinary persons.'" *Holloway*, 2007 WL 4322128, at *9 (quoting *Boote v. Shivers,* 198 S.W.3d 732, 745 (Tenn. Ct. App. 2005); *McClellan v. McClellan,* 873 S.W.2d 350, 352 (Tenn. Ct. App. 1993)).

Husband stated in his Rule 59.04 motion that Wife "manipulated and led [him] to believe that, if he just signed the Marital Dissolution Agreement, they could work things out and continue to be married." He stated that she "texted pictures of herself to [him] and continued to converse with [him] in a manner which led him to believe the parties could reconcile"; that she "fraudulently and intentionally misrepresented her intentions of the Marital Dissolution Agreement to [Husband]"; and that her misconduct caused him to "sign a document, without the advice of counsel, and, quite literally, give away everything he had."

Wife filed a response to Husband's motion, stating that Husband could have sought legal counsel and could have refused to sign the MDA but chose not to do either and that she did not have the ability or desire to coerce or mislead Husband into signing the MDA. She also stated:

> The Husband is a grown man and works [a] professional job. The Husband is not handicapped or otherwise incapable of reading and comprehending what he is reading, nor is the Husband unable to understand that he initialed every page of the MDA acknowledging that he knew what he was signing. Finally, the Husband had ample opportunity to hire counsel and chose not to of his own volition.

Wife denied that she led him on by sending him pictures or that she had "in any way mispresented herself to the Husband to make him sign the MDA." She also stated that she "offered many different proposals for the distribution of property and debt but the Husband declined to sign the papers until the Wife was awarded the assets as set out in the MDA that was signed and filed and approved by the Court."

The trial court examined the motion, Wife's response and exhibits thereto, and concluded, "[Husband] may have made a bad deal but had ample time to seek counsel or repute his agreement prior to the finalization of his divorce. No showing of how a soon to be ex-wife could overcome the free will of a fifty year old man."

The record before us indicates that Husband was involved in the negotiation of the terms of the MDA but does not demonstrate how Wife's actions amounted to restraint, intimidation, or compulsion severe enough to overcome his free will, such that he was under duress at the time he signed it.

We conclude that the trial court did not abuse its discretion in denying Husband's motion to alter or amend upon its conclusion that relief from the judgment was unwarranted.

IV.     Wife's Request for Attorney Fees on Appeal

Turning to Wife's request for her attorneys' fees on appeal, she seeks them pursuant to the terms of the MDA or, alternatively, in our discretion. Tennessee courts follow the American Rule, which provides that litigants must pay their own attorney fees unless there is a statute or contractual provision or some other recognized exception that applies, allowing for the recovery of such fees in a particular case. *Eberbach v. Eberbach*, 535 S.W.3d 467, 474 (Tenn. 2017). In this case, Paragraph 16 of the MDA provides for the award of attorney fees in the following situation:

> ENFORCEMENT: In the event it becomes reasonably necessary for either party to institute legal proceedings to procure the enforcement of any provision of this Agreement, that party shall also be entitled to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action.

As we consider this provision, we are mindful of the Tennessee Supreme Court's holding in *Eberbach*:

> [T]he Court of Appeals has no discretion whether to award attorney's fees when the parties have a valid and enforceable marital dissolution agreement which requires an award of reasonable attorney's fees to a prevailing or successful party. When such a MDA exists, it is subject to the normal rules of contractual interpretation and enforcement. If the MDA is determined to be a valid and enforceable agreement, the terms of the parties' agreement govern the award of fees, and the court must enforce the parties' terms to the extent the agreement demands. . . .
>
>   Courts reviewing requests for fees pursuant to a MDA fee provision should first determine whether the parties have a valid and enforceable MDA that governs the award of attorney's fees for the proceeding at bar. If so, our courts must look to the actual text of the provision and determine whether the provision is mandatory and applicable. If so, the MDA governs the award of fees, and our courts must enforce the parties' contract.

- 13 -

> If the court determines the MDA is inapplicable to the case, it should so state on the record. . .

*Eberbach*, 535 S.W.3d 467, 478-79. "With regard to the issue of whether Wife was entitled to a grant of attorney's fees under theMDA, the proper standard of review is *de novo* because the issue is a question of law." *Id.* at 479 n.7. The Court went on to hold that "[t]he defense of Wife's trial court judgment at the Court of Appeals thus qualifies as 'prosecuting the action' under a plain reading of the Parties' MDA fee provision," and because she was the prevailing party at both the trial and appellate levels, the MDA entitled her "to a judgment for reasonable expenses, including attorney's fees, incurred in prosecuting the action" on appeal. *Id.* at 480.

In the case at bar, while Husband was not attempting to "procure the enforcement of any provision of [the MDA]," he was contesting the validity and enforceability of the MDA itself in the trial court and on appeal. The trial court declined to alter or amend its judgment, finding the MDA to be valid and enforceable, and we have affirmed that holding. Accordingly, we conclude that the MDA entitles Wife to recover her attorney's fees for defending the trial court's judgment on appeal. We remand the matter to the trial court for calculation of that award.

CONCLUSION

The judgment of the trial court is affirmed, and the case is remanded for proceedings in accordance with this opinion. Costs of this appeal are assessed against the appellant, Russell Joseph Polster, for which execution may issue if necessary.

_/s/ *Andy D. Bennett*_____
ANDY D. BENNETT, JUDGE

- 14 -